27 C.C.P.A.(Patents)

**JOSEPH TETLEY & CO., Inc., v. FANT MILLING CO. (two cases).**

**Patent Appeals Nos. 4258–4260.**

Court of Customs and Patent Appeals.

May 6, 1940.

LENROOT and BLAND, Associate Judges, dissenting in part.

———◆———

Herbert J. Jacobi, of Washington, D. C. (George C. Baldt, of Washington, D. C., of counsel), for appellant.

M. S. Meem, of Washington, D. C. (Richard L. Underwood, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in two trade-mark opposition proceedings and a trade-mark cancellation proceeding from the decisions of the Commissioner of Patents reversing the decisions of the Examiner of Interferences sustaining appellant's notices of opposition to the registration of two of appellees' trade-marks, and sustaining appellant's petition for the cancellation of appellee's registered trade-mark.

The trade-marks involved in these appeals will be hereinafter described.

The three cases were consolidated and submitted to the tribunals of the Patent Office on a single record. Accordingly, we shall dispose of the issues presented in one opinion.

No evidence was submitted by appellant in any of the three cases relative to the use of its trade-marks.

Evidence was introduced by the Fant Milling Company on October 30, 1937, consisting of the oral testimony of the witness James A. Fant, general manager of that company, and certain documentary evidence consisting of invoices showing sales by that company of its goods under its involved trade-marks.

Subsequent to the introduction of that evidence, it was ascertained by counsel for appellees that on May 31, 1937, five months prior to the taking of the testimony of the witness Fant, the Fant Milling Company had sold, assigned, and transferred all of its right, title, and interest in and to its registered trade-mark, together with the good will of the business in connection with which its trade-mark was used, to the Tex-O-Kan Flour Mills Company (a Delaware corporation, having its principal office and place of business in Dallas, Texas), which assignment was duly recorded in the United States Patent Office July 2, 1937, and that on or about May 31, 1937, the Fant Milling Company had sold, assigned, and transferred all of its assets, including its trade-marks and good will of the business in connection with which its trade-marks were used, to the Tex-O-Kan Flour Mills Company, which assignment was duly recorded in the United States Patent Office on December 23, 1937. Thereupon, counsel for the Tex-O-Kan Flour Mills Company, who also represented the Fant Milling Company, moved to substitute the Tex-O-Kan Flour Mills Company for the Fant Milling Company in the cancellation proceeding and in each of the opposition proceedings, and called the attention of the Examiner of Interferences to the fact that the assignments by the Fant Milling Company to the Tex-O-Kan Flour Mills Company, hereinbefore referred to, were recorded in the United States Patent Office. (For reasons which are of no importance here, the motions of counsel for the Fant Milling Company were denied.)

By virtue of the stipulation entered into by counsel for the parties, dated December 16, 1937, the Tex-O-Kan Flour Mills Company, on December 22, 1937, was substituted for the Fant Milling Company in the cancellation proceeding, and, on January 17, 1938, upon motions made by it, the Tex-O-Kan Flour Mills Company, over the objections of counsel for appellant, was joined as a party with the applicant—the Fant Milling Company—in each of the opposition proceedings. (We may state at this point that, in view of the facts and circumstances appearing of record, we think the joining of the Tex-O-Kan Flour Mills Company as a party with the Fant Milling Company in each of the opposition proceedings was proper.)

On February 23, 1938, appellant moved to strike from the record the evidence submitted by the Fant Milling Company for the following reasons: First, that it did not appear from that evidence that it was submitted by or on behalf of a "corporation identified with said registration," or a corporation identified with the applications for registration involved in the two opposition proceedings; second, that "There appears in the records of the Patent Office, a Bill of Sale and an Assignment, copies of which are attached hereto, which reveal that at the time the evidence was adduced * * * the trade mark was owned by the Tex-O-Kan Flour Mills Company, and yet the sole witness produces evidence and testimony that the mark was still being used by a certain Fant Milling Company" (italics ours); and third, that "The Fant Milling Company about which the evidence is given is not proved to be a party interested in the present proceedings because of the lack of identity."

The Examiner of Interferences found it unnecessary to pass upon appellant's motion, and, accordingly, did not do so.

In his original decisions, the Commissioner of Patents also stated that it was unnecessary to pass upon appellant's motion to strike the evidence introduced by the Fant Milling Company, although in

those decisions he apparently considered that evidence. In his decisions, in answer to appellant's requests for reconsideration of his original decisions, the commissioner denied appellant's motion to strike, and his decisions in that respect are assigned as error in this court.

Counsel for appellant argue here that the motion to strike the evidence introduced by the Fant Milling Company should have been granted by the tribunals of the Patent Office for the following reasons: First, that that evidence does not establish that the Fant Milling Company, on whose behalf it was submitted, is a corporation, although that company, the registrant in the cancellation proceeding and the applicant in each of the opposition proceedings, appears to be a Texas corporation; second, that the evidence does not identify the Fant Milling Company as the registrant in the cancellation proceeding, or the applicant in the opposition proceedings; third, that the only witness who testified on behalf of the Fant Milling Company was James A. Fant, who stated that on October 30, 1937, the date on which his testimony was given, the Fant Milling Company was still using each of appellees' involved trade-marks, although five months prior thereto he, as president of the Fant Milling Company, had signed and acknowledged the assignments hereinbefore referred to; and fourth, that the witness failed to mention in his testimony that all of the right, title, and interest in and to each of the trade-marks here involved and the good will of the business in connection with which such trade-marks were used had been sold, assigned, and transferred to the Tex-O-Kan Flour Mills Company, and that, therefore, his testimony should be given but little credence.

It is true that the sole witness in the case, James A. Fant, did not identify the Fant Milling Company as the owner of any of the trade-marks involved in these proceedings. However, from a consideration of the evidence sought to be stricken from the record (the substance of which will be hereinafter set forth) together with the assignments by the Fant Milling Company to the Tex-O-Kan Flour Mills Company, which assignments counsel for appellant introduced into the record as a part of their motion to strike, we think the Fant Milling Company is sufficiently identified as a corporation and the original owner of the trade-mark registration sought to be cancelled in the cancellation proceeding, as well as the original applicant for the registration of the trade-marks involved in the two opposition proceedings.

Although we do not wish to be understood as approving the manner in which the involved cases have been presented on behalf of appellees, we are of opinion that the Commissioner of Patents was right in overruling appellant's motion to strike the evidence introduced by the Fant Milling Company, at least so far as it relates to the use by the Fant Milling Company of the involved trade-marks on its goods to the date of certain assignments of its right, title, and interest in and to its trade-marks hereinafter discussed. Accordingly, we will proceed to a consideration of the involved cases on the merits.

Appeal Nos. 4258 and 4259.
Trade-Mark Opposition Nos. 16,486 and 16,517.

These are appeals in trade-mark opposition proceedings in which appellant in opposition No. 16,486, opposed the Fant Milling Company's application No. 386,763, filed December 15, 1936, for the registration of a trade-mark, comprising the words "King Elefant" appearing immediately above a pictorial representation of the side-view of an elephant, for use on "wheat flour with high gluten content," and in opposition No. 16,517, opposed the Fant Milling Company's application No. 386,764, filed December 15, 1936, for the registration of a trade-mark, comprising the words "King Elefant" appearing immediately above, and the word "Special" immediately beneath, a pictorial representation of the side-view of an elephant, for use on "wheat flour with *special* high gluten content [italics ours]," the word "Special" being disclaimed apart from the mark as shown.

In its notices of opposition, appellant alleged that it was the owner of the following trade-mark registrations: Registration No. 17,082, issued October 1, 1889, on an application filed August 19, 1889, for a composite trade-mark, comprising the words "Tetley's Tea" appearing in prominent type immediately above a pictorial representation of the head of an elephant, together with other ancillary features, such as two packages suspended from the elephant's uplifted trunk and a waving flag appearing on each side of the head, for use on tea; registration No. 325,485, issued June 25, 1935, on an application filed January 30, 1935, for the words "Elephant Brand," the

word "Brand" being disclaimed apart from the mark as shown, for use on tea; and registration No. 294,997, issued June 14, 1932, on an application filed May 4, 1931, for a trade-mark, comprising a pictorial representation of the head of an elephant having a package held in the trunk beneath the tusks, for use on "Tea, Coffee, Cocoa, Chocolate, Sugar, Spices, Prepared Puddings and Jams; Spreads for Bread, Cake, and/or Crackers—Namely, Cheese, Relish, Preserves, and Mixed Meat Spreads." Appellant also alleged ownership of several other registrations of composite marks, which include the head of an elephant, and in one instance an elephant and a rider thereon, together with the word "Tetley," which marks, due to the views we hold, need not be fully described here. Most of those marks are for use on tea only. One, however, is for use on tea, coffee, cocoa, chocolate, sugar, and spices, and another is for use on "Tea, Coffee, Cocoa, Chocolate, Sugar, Spices, Prepared Puddings and Deserts; Bread, Cake, and/or Cracker Spread Such as Jam and Jellies and Fruit Juices." Appellant further alleged that it would be damaged by the registration of appellees' marks.

It appears from the evidence introduced by the Fant Milling Company, hereinbefore referred to, that that company's principal place of business is in Sherman, Grayson County, Texas; that that company, since May 1, 1921, had been, and at the time the assignments hereinbefore referred to were made was, engaged in the "manufacture and sale of flour, cream meal, mixed feeds and the mill feeds"; that during that entire period it had manufactured flour of high gluten content "for use by commercial bakers," and had sold it to commercial bakers under the trade-mark "Red Elefant" (involved in the cancellation proceeding, appeal No. 4260); that the "Red Elefant" trade-mark comprises the words "Red Elefant" appearing immediately beneath a pictorial representation "printed in red" of the side-view of an elephant; that the Fant Milling Company adopted the "King Elefant" and "King Elefant Special" trade-marks in July 1936; and that from that date to the date of the assignments hereinbefore referred to the Fant Milling Company used each of those marks in interstate commerce on flour of high gluten content.

It may be said at this point that, although it appears from the record, as hereinbefore

noted, that, on or about May 31, 1937, the Fant Milling Company sold, transferred, and assigned all of its assets, including its trade-marks, to the Tex-O-Kan Flour Mills Company, the witness Fant stated that the Fant Milling Company had thereafter continued to sell the gluten flour under the involved trade-marks, but he did not explain by what authority it did so. However, there is no issue presented here between the Fant Milling Company and the Tex-O-Kan Flour Mills Company.

It further appears from the evidence that the flour sold under the "King Elefant Special" trade-mark was of slightly higher gluten content than that sold under the "King Elefant" trade-mark; that the flours sold under those trade-marks "are used mostly by bakers in the New York market *who bake a high grade of hearth bread* which is not generally used through the rest of the Fant Milling Company's territory [italics supplied]," and that the gluten flours and the involved trade-marks have been advertised, to what extent the witness did not state, in certain trade publications which are circulated to bakers, flour brokers, and millers throughout the United States.

Although the evidence introduced by the Fant Milling Company is not entirely satisfactory, we think it clearly appears therefrom that appellees' gluten flour is manufactured for sale and is sold exclusively, either directly or indirectly through brokers, to commercial bakers for use in making gluten bread.

"Gluten bread," as defined in Webster's New International Dictionary, has a low starch content, and is prepared expressly for use by persons suffering from diabetes.

It is evident, therefore, that appellees' gluten flour is sold to discriminating purchasers.

In all of appellant's registrations relied upon here, except two, hereinbefore described, the word "Tetley," which is the dominant feature of appellant's corporate name, appears as a prominent feature of its trade-marks.

Although appellant has relied upon the term "Elephant" in its registration No. 325,485 to indicate the origin of its tea, and upon a pictorial representation of the head of an elephant in registration No. 294,997 to indicate origin in it of "Tea, Coffee, Cocoa, Chocolate, Sugar, Spices, Prepared Puddings and Jams; Spreads for

Bread, Cake, and/or Crackers—Namely, Cheese, Relish, Preserves, and Mixed Meat Spreads," we may take judicial notice of the fact that all of the goods on which those trade-marks are used are sold at retail to the general public; whereas, according to the evidence of record, appellees' goods are sold to more discriminating purchasers—brokers and commercial bakers.

■■■ We are in agreement with the views expressed by counsel for appellant that the goods of the respective parties possess the same descriptive properties. Nevertheless, we are in accord with the views expressed by the Commissioner of Patents that, taking into consideration the differences in the marks of the parties, the goods on which their marks are used, and the people to whom such goods are sold, the registration of appellees' "King Elefant" and "King Elefant Special" marks will not be likely to cause confusion or mistake in the mind of the public, and that appellees are entitled to have each of their marks registered.

We may state in conclusion that if, contrary to the views we hold, the "King Elefant" and "King Elefant Special" trade-marks are confusingly similar to appellant's registered elephant-head trade-mark (registration No. 294,997, from which it appears that, with the exception of its use on tea, appellant has used the mark only since January 12, 1929,) the latter mark might in a cancellation proceeding be held to be confusingly similar to appellee's registered "Red Elefant" trade-mark (registration No. 315,296, involved in the cancellation proceeding), which mark the Fant Milling Company adopted and used long prior to the use by appellant of its elephant-head trade-mark on goods other than tea. That issue, however, is not before us.

For the reasons stated, the decision of the Commissioner of Patents in each of the involved appeals is affirmed.

Affirmed.

Appeal No. 4260.

Trade-Mark Cancellation No. 3200.

This is a trade-mark cancellation proceeding in which appellant seeks to cancel appellee's trade-mark registration No. 315,-296, issued July 24, 1934 on an application —No. 346,500—filed by the Fant Milling Company on January 25, 1934 for appellee's "Red Elefant" trade-mark for use on wheat flour.

Appellee's registered mark, hereinbefore described in appeals No. 4258 and 4259, comprises the words "Red Elefant" appearing immediately beneath a pictorial representation "printed in red" of the side-view of an elephant.

Appellant alleged in its petition for cancellation that it was the owner of the several registrations, hereinbefore set forth in appeals Nos. 4258 and 4259; that the goods of the parties possess the same descriptive properties; that appellee's registered mark is confusingly similar with appellant's registered marks, and that, therefore, appellant has been damaged by appellee's registration.

No evidence was introduced by appellant as to the use of its marks.

It appears from the record that all of appellant's registrations, except registration No. 17,082 issued October 31, 1889, for the trade-mark hereinbefore described in the companion appeals, were adopted by appellant subsequent to the year 1922, when appellee's predecessor, the Fant Milling Company, adopted and first used its registered mark. Accordingly, the sole issue involved in this appeal is whether appellee's registered mark "Red Elefant" is confusingly similar with appellant's mark registered in 1889, the dominant features of which are the word "Tetley" and the head of an elephant.

As stated in the companion appeals, the word "Tetley," which is the dominant feature of appellant's corporate name, appears, together with the word "Tea," immediately above the representation of an elephant head in the registered mark of appellant here involved.

It appears from the record, as hereinbefore noted, that appellee's predecessor, the Fant Milling Company, adopted the "Red Elefant" trade-mark early in the year 1922, and used it on the goods and in the manner hereinbefore set forth.

■■ Considering the differences in the goods of the respective parties (appellant's being tea and appellee's wheat flour) together with the differences in the involved trade-marks, we are of opinion that the marks are not confusingly similar and that appellee's predecessor was entitled to the use of its mark on the date of its application for the registration thereof.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

LENROOT, Associate Judge (dissenting in part).

With respect to the conclusion reached in appeals Nos. 4258 and 4259, it is my opinion that the marks involved in appellee's applications are confusingly similar with appellant's mark, registration No. 294,997, comprising a pictorial representation of the head of an elephant, having a package held in the trunk beneath the tusks, for use on spreads for bread, cake, crackers, and other goods. Appellee, in adopting the mark consisting of the representation of the side view of an elephant and the words "King Elefant" for use on wheat flour of high gluten content, has incorporated in legal effect the entire mark of appellant above described. In the case of Carmel Wine Co. v. California Winery, 38 App.D.C. 1, which has been cited with approval by us in the case of Frankfort Distilleries, Inc. v. Kasko Distillers Products Corp., Patent Appeal No. 4305, 111 F.2d 481, 27 C.C.P.A., Patents, ——, it was stated: " * * * It goes without saying that one has no right to incorporate the mark of another as an essential feature of his mark. Such a practice would lead to no end of confusion, and deprive the owner of a mark of the just protection which the law accords him."

It is my opinion that some of the goods upon which appellant's mark above described is used, viz., spreads for bread, cake, and crackers, are so nearly related to the goods upon which appellee's marks are used, namely, wheat flour of high gluten content, that purchasers of appellee's goods bearing its trade-marks would be likely to ascribe origin of the same to appellant, believing that the slight difference in marks arose only because of the different character of the goods to which the marks are applied.

The majority opinion states that under the evidence appellee's goods are sold only through brokers and to commercial bakers. I think it is a fair assumption that in the ordinary course of business appellant's goods are also sold through brokers and to commercial bakers, although not exclusively so, and in the ordinary course of business a broker might well conclude that an offer of sale of "King Elefant" brand of wheat flour of high gluten content was an offer of goods produced by appellant.

With respect to appeal No. 4260, I am in agreement with the conclusion reached by the majority and the reasoning upon which it is based. The distinction between this case and the opposition cases lies in the composite nature of appellant's mark, registration No. 17,082, compared with the "Red Elefant" mark of appellee, and in the fact that the goods on which the respective marks are used are confined to tea and wheat flour, whereas in the opposition cases the entire mark of appellant there involved was, in effect, incorporated by appellee in its marks and used upon goods closely related to the goods upon which appellant uses its mark.

BLAND, Associate Judge (dissenting in part).

I agree to the conclusions in the foregoing opinion by LENROOT, Judge, who dissented in part, and one of the reasons which leads me to disagree with the views of the majority in appeals Nos. 4258 and 4259 is the fact that, in my opinion, the differences in the character of purchasers of the respective goods is overemphasized. While such differences may be a circumstance in some cases which is worthy of some consideration, it should not be overemphasized in view of the fact that trade practices frequently change.