ADVANZ BEHAVIORAL MANAGE-
MENT RESOURCES, INC., a
corporation, Plaintiff,

v.

Clarita G. MIRAFLOR, an individual, and Ara Manukyan, an individual, dba West Coast Forms & Graphics; and Does 1–10, inclusive, Defendants.

No. CV 95–8877–AJW.

United States District Court,
C.D. California,
Western Division.

Sept. 18, 1998.

Ronald Gold, Murphy & Gold, Calabasas, Thomas I. Rozsa, Tony D. Chen, Rozsa & Chen, Encino, CA, for plaintiff.

Clint William Feddersen, Clint W. Feddersen Law Offices, Diamond Bar, David B. Weintraub, David B. Weintruab Law Offices, Los Angeles, CA, for defendants.

## MEMORANDUM OF DECISION [1]

WISTRICH, United States Magistrate Judge.

The question presented by this case is whether forms designed for recording information about medical patients are copyrightable subject matter. The answer to that question turns on the scope of the so-called "blank forms rule." Correct application of that rule as it presently exists within the Ninth Circuit to the facts of this case leads to the conclusion that the forms are not copyrightable subject matter.

---

1. This Memorandum of Decision contains the Court's findings of fact and conclusions of law. See Fed.R.Civ.P. 52(a) ("It will be sufficient if the findings of fact and conclusions of law...appear in an opinion or memorandum of decision filed by the court.").

## Facts

Plaintiff Advanz Behavioral Management Resources, Inc. ("Advanz") is a corporation in the business of home health care management. In conducting its business, plaintiff uses a series of five forms. Those forms are entitled (1) "Medical Social Service Evaluation," (2) "MSS Communication Note," (3) "Medical Social Service Discharge Summary," (4) "Medical Social Service Follow-up," and (5) "Daily Visit Route Sheet."

Marciela Calatayud and Arpineh Keshishian created the five forms used by plaintiff. On October 12, 1995, Keshishian and Calatayud executed a written assignment of any right, title or interest they possessed in those forms to plaintiff.

During October and November, 1995, plaintiff applied for registration of copyrights in each of the five forms individually, and for the five forms as a series. Plaintiff received copyright registrations for the four forms entitled (1) "Medical Social Service Follow-up," (2) "Daily Visit Route Sheet," (3) "Medical Social Service Evaluation," (4) "Medical Social Service Discharge Summary." [2]

Plaintiff's attempted registration of the fifth form, entitled "MSS Communication Note," was refused on the ground that it was an uncopyrightable blank form.[3] The Copyright Office offered the following explanation for its determination:

> "We are unable to register this claim as blank forms and similar works, designed to record rather than to convey information, are not protected by copyright. * * * Copyright protects only the actual expression of the author; it does not protect the ideas, plans, methods, or systems that are described or embodied in a work. Thus, there is no way to secure copyright protection for the idea or principle behind a blank form or similar work, or for any of the methods or systems involved in it. Although a blank form, when completed, may provide the user with a substantial amount of helpful information, the form itself is not necessarily copyrightable. * * * Since this work does not contain any materials subject to copyright protection, registration is not possible. We are therefore closing our file without action."

■ Plaintiff received a fifth copyright registration for a "Series of Five Medical Social Service Forms for Home Health Care." This means that there is an inconsistency in the Copyright Office's treatment of the form entitled "MSS Communication Note." It declined to register that form separately, yet registered that form as part of the series of five forms. This discrepancy, however, is inconsequential. As plaintiff's counsel correctly concedes, the "series" registration is not greater than the sum of its parts, and adds nothing not already supplied by the separate registrations of the four forms individually. Therefore, the series registration rises or falls depending on the disposition of the separate registrations, and need not be analyzed separately.[4]

Defendant Clarita G. Miraflor operates Wellness Home Healthcare, Inc. ("Wellness"). Plaintiff entered into a contract to provide services to Wellness. Plaintiff presented its forms to Miraflor for use in the course of the contractual relationship between plaintiff and Wellness.

Defendant Ara Manukyan does business as West Coast Forms & Graphics. Manukyan prints blank forms and other documents for Miraflor, Wellness, and others. Manukyan

---

2. Copies of those forms are attached as exhibits 1–4 to this Memorandum of Decision.

3. A copy of that form is attached as exhibit 5 to this Memorandum of Decision.

4. The Copyright Act provides that "the Register of Copyrights shall establish regulations specifically permitting a single registration for a group of works by the same individual author ...." 17 U.S.C. § 408(c)(2). As the statute explains, however, "this administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title." 17 U.S.C. § 408(c)(1). The legislative history indicates that the purpose of allowing related works to be registered together as a group to avoid situations in which "the technical necessity for separate application and fees has caused copyright owners to forego copyright altogether." The House Report on the Copyright Act of 1976, No. 94–1476, 94th Cong., 2d Sess. 154. Among the examples provided was "a series of greeting cards related to each other in some way, or a group of poems by a single author." The House Report on the Copyright Act of 1976, No. 94–1476, 94th Cong., 2d Sess. 154.

received copies of plaintiff's forms from Miraflor, and copied them. Manukyan also printed a brochure entitled "Home Health Care Forms," in which several forms virtually identical to plaintiff's forms were displayed, in a reduced size, with some modifications and overlapping.

Because of the narrow legal basis on which this case is decided, it is unnecessary for the Court to delve into and resolve any factual issues as to the extent of any alleged copying by defendants, plaintiff's alleged authorization of defendants' copying, and so on.

### Liability

In order to prevail in a copyright infringement action, the plaintiff must demonstrate: (1) ownership of a valid copyright in the allegedly infringed work, and (2) copying of protected expression contained in the allegedly infringed work by the defendants. *E.g., Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Triad Systems Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1335 (9th Cir.1995), *cert. denied,* 516 U.S. 1145, 116 S.Ct. 1015, 134 L.Ed.2d 96 (1996), "Plaintiff's ownership, in turn, breaks down into the following constituent parts: (1) originality in the author; (2) copyrightability of the subject matter; (3) citizenship status of the author, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) (if the plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant." 4 Nimmer on Copyright § 13.01(A)(1997) (footnotes omitted).

Of the two essential elements (and the five sub-elements of the first element), defendants challenge only one sub-element, namely, copyrightability of the subject matter.[5] Defendants argue that plaintiff's forms are unregisterable blank forms pursuant to a

regulation issued by the Copyright Office. That regulation provides:

> The following are examples of works not subject to copyright, and applications for registration of such works cannot be entertained:
>
> "(c) Blank forms, such as time cards, graph paper, account books, diaries, blank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not themselves convey information ...."

37 C.F.R. § 202.1(c). Defendants also contend that such an outcome is mandated by controlling case law. *See Bibbero Systems, Inc. v. Colwell Systems, Inc.,* 893 F.2d 1104 (9th Cir.1990).

Plaintiff obtained certificates of registration for each of the allegedly infringed works within five years after first publication of the works. Accordingly, plaintiff is entitled to a presumption that the allegedly infringed works contain copyrightable subject matter. *See* 17 U.S.C. § 410(c).

The effect of that presumption is that a certificate of copyright registration constitutes *prima facie* evidence of copyrightability and shifts the burden of persuasion to the defendant to demonstrate that the work is not copyrightable. *See, e.g., Bibbero Systems,* 893 F.2d at 1106. "[T]his presumption 'shifts the burden of proof to the defendants to demonstrate why plaintiff's [works] are not copyrightable.'" *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 201 (9th Cir.1989), quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1019 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

At least insofar as copyrightability is concerned, this presumption makes sense. The Copyright Office registers only works which, "after examination," it determines contain copyrightable subject matter. *See* 17 U.S.C.

---

**5.** With respect to the blank forms rule, there may be overlap between two of the sub-elements of ownership of a valid copyright in the allegedly infringed work, namely the sub-elements of originality of authorship and copyrightability of the subject matter. The distinction between the two is blurred, at least in the context of analysis of the validity of copyrights in blank forms. *See* 1 Nimmer on Copyright § 2.18[C][1] (1997) (not-

ing that denying registrability to "works designed for recording information which do not in themselves convey information" on the ground of lack of copyrightable subject matter "may often be proper simply because the lines, column headings and divisions of subject matter are likely to lack the necessary originality to support a copyright.") (footnote omitted), quoting 37 C.F.R. § 202.1(c).

§ 410(a). Works that the Copyright Office determines lack copyrightable subject matter are not registered. 17 U.S.C. § 410(b). The copyrightability of a work is usually apparent on the face of the work, and the Copyright Office performs a substantive examination within its particular expertise to determine whether a work presented for registration falls within the subject of copyright. *See* Compendium II of Copyright Office Practices ¶ 108.01 (1984). Nevertheless, the presumption of copyrightable subject matter established by the timely issuance of a certificate of registration is rebuttable. *See Bibbero Systems,* 893 F.2d at 1107 (holding work uncopyrightable despite prior registration by the Copyright Office).[6]

The blank forms rule is problematic. Its deficiencies have been explored in detail elsewhere and need only be briefly summarized here. The blank forms rule has been criticized on a variety of grounds. It has been argued that the rule is an unwarranted extension of dicta contained in *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879), that it lacks a consistent rationale, that it is inconsistent with the purposes of the Copyright Act, and that in light of interpretative guidelines issued by the Copyright Office after the 1976 revision of the Copyright Act there is no such rule. *See, e.g.,* 1 Nimmer on Copyright § 2.18[A]—[D] (1997); 1 William F. Patry, Copyright Law & Practice 328 (6th ed.1994). These criticisms are justified.

The blank forms rule had its genesis in *Baker, see Bibbero Systems,* 893 F.2d at 1106 (describing 37 C.F.R. § 202.1(c) as a "codification" of *Baker*), which has been described as "the leading case on the doctrine that excludes functional systems and processes from the subject matter of copyright ...." Lloyd L. Weinreb, Copyright for Functional Expression, 111 Harv. L.Rev. 1150, 1152 (1998). The holding of *Baker,* however, does not extend as far as the blank forms rule has been applied.

The work at issue in *Baker* was a pamphlet entitled "Selden's Condensed Ledger, or Book–Keeping Simplified." *Baker,* 101 U.S. at 100. The pamphlet described a system of double entry bookkeeping by which entries for a day, a week, or a month were presented on a single page on facing pages. *Baker,* 101 U.S. at 100. The pamphlets contained an essay explaining the bookkeeping system, followed by sample forms consisting of lines and labeled columns displaying how the system should be implemented. *Baker,* 101 U.S. at 100. The defendant created and sold books of forms that used the same system, but with a different arrangement of columns and different headings. *Baker,* 101 U.S. at 100. The court of appeals held that the copyrights were valid and that the defendant had infringed them. As framed by the parties, and ultimately by the Supreme Court, the question in *Baker* was "whether the exclusive property in a system of bookkeeping can be claimed, under the law of copyright, by means of a book in which that system is explained?" *Baker,* 101 U.S. at 101. The Supreme Court decided that it could not. *See Baker,* 101 U.S. at 104–105. As it explained:

"The use of the art is a totally different thing from a publication of a book explaining it. The copyright of a book on bookkeeping cannot secure the exclusive right to make, sell, and use account-books prepared upon the plans set forth in such book. * * * The plausibility of the claim put forward by the claimant in this case arises from a confusion of ideas produced by the peculiar nature of the art described in the books which have been made the subject of copyright. In describing the art, the illustrations and diagrams employed happen to correspond more closely than usual with the actual work performed by the operator who uses the art. * * * [I]n using the art, the ruled lines and

6. Plaintiff argues that the fact that one of the forms—the one entitled "MSS Communication Note"—was rejected on the ground that it was a blank form, and the other forms were not, shows that the Copyright Office had the blank forms rule in mind and employed its expertise to distinguish between the one form which was an unreg-

isterable blank form, and the other forms, which were not. Although plaintiff's point is a fair one, its force is diminished by the fact that the Copyright Office registered the form entitled "Daily Visit Route Sheet," a form that plainly does not qualify for registration.

headings of accounts must necessarily be used as incident to it."

*Baker*, 101 U.S. at 104.

*Baker* holds that a system or art of practical utility cannot be copyrighted, no matter what the manner of its representation. *Baker* does not hold that forms consisting of labeled spaces for recording information are inherently disqualified from copyrightability. Perhaps *Baker* is best interpreted as authority for the proposition that neither a system nor an entirely blank form (such as ruled paper) is copyrightable in and of itself, but not as authority for the proposition that all forms for recording information are necessarily uncopyrightable.[7]

At the end of its opinion in *Baker*, however, the Supreme Court made the following remark:

> "The conclusion to which we have come is, that blank account books are not the subject of copyright; and that the mere copyright of Selden's book did not confer upon him the exclusive right to make and use account-books, ruled and arranged as designated by him and described and illustrated in said book."

*Baker*, 101 U.S. at 107. That Delphic dictum, rather than the holding of *Baker*, gave rise to what has come to be known as the "blank forms rule."

Although its origin is clear, the theoretical basis of the blank forms rule is murky. The rule seems to be based on one or more of four distinct but overlapping rationales: (1) some blank forms (such as ruled paper or graph paper) contain no expression; (2) some blank forms (such as luggage tags providing labeled spaces for recording the owner's name, address, and telephone number) contain expression, but such expression is unori-

ginal; (3) some blank forms (such as fill-in-the-blanks medical diagnosis protocols) contain expression, but such expression cannot meaningfully be distinguished from the idea, process, or system of analysis or decision-making defined by the structure and sequence of the labeled spaces; or (4) blank forms, however elaborate or original, that do not convey information, but merely serve as repositories to structure the recording of information. *See, e.g., Baker*, 101 U.S. at 107 (rationales 1 and 3); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 971–972 (11th Cir.1983) (rationale 2); *Bibbero Systems*, 893 F.2d at 1106 (rationale 4); 37 C.F.R. § 202.1(c) (originally rationale 4, but after 1980 more likely rationale 2). Blank forms, then, may be uncopyrightable because they lack the requisite modicum of original expression (rationales 1, 2 and 3), or they may be uncopyrightable because of their essential nature as repositories for the recording of information even when they do (rationale 4). This doctrinal uncertainty has not gone unnoticed. Even the Ninth Circuit has acknowledged that "cases interpreting the blank forms rule do not yield a consistent line of reasoning." *Bibbero Systems*, 893 F.2d at 1107; *see also*, Paul G. Reiter, Annotation, Copyright, Under Federal Copyright Laws, of Forms or Form Books, 8 A.L.R. Fed. 869 (1971) (collecting conflicting case law).

The blank forms rule also is at odds with the purpose of copyright. "The primary purpose of copyright is not to reward the author, but is rather to secure the general benefits derived by the public from the labor of authors." 1 Nimmer on Copyright § 1.03[A] (1997), citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127, 52 S.Ct. 546, 76 L.Ed. 1010

---

**7.** One commentator has attempted a reconstruction of *Baker*, arguing that the case is really about non-infringement rather than about copyrightability, and contends that if the defendant in *Baker* had copied the plaintiff's forms exactly and instead of preparing differing ones of his own, he would have been held to have infringed a valid copyright. *See* 1 Nimmer on Copyright § 2.18[B][2] (1997). Under that theory, the forms involved in this case would be copyrightable if defendants copied them exactly rather than preparing derivative works of their own. It is doubtful, however, whether this is a fair reading of *Baker*. *See* Weinreb, 111 Harv. L.Rev. at 1175

(stating that "[t]here is no support for this reconstruction of *Baker v. Selden* in the briefs or in the court's opinion …"). On the other hand, the Supreme Court seems to have adopted such an interpretation of *Baker*. *See Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) (stating that in *Baker* "the Court held that a copyrighted book on a peculiar system of bookkeeping was not infringed by a similar book using a similar plan which achieved similar results where the alleged infringer made a different arrangement of the columns and used different headings.").

(1932); see U.S. Const., Art. I, § 8, cl. 8. ("To promote the Progress of Science and useful Arts, by securing for limited times to Authors and Inventors the exclusive right to their respective Writings and Discoveries."). "It is intended to motivate the creative activity of authors and inventors by the provision of special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975) ("Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright laws is to secure a fair return for 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good."); *see generally* William M. Landes & Richard A. Posner, An Economic Analysis of Copyright Law, 18 J. Legal Stud. 325 (1989).

The fact that a work consists of labeled spaces intended to be filled in with information, of course, does not necessarily mean that the policy of copyright is not served by protecting it. A so-called "blank form" may be very valuable, and encouragement of its creation may be a worthy object of the copyright laws. *See Kregos v. Associated Press*, 937 F.2d 700, 708 (2d Cir.1991) (stating that "many courts have recognized that there can be protectable elements of forms that include considerable blank spaces."), *on remand*, 795 F.Supp. 1325 (S.D.N.Y.1992), *aff'd after remand*, 3 F.3d 656 (2d Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); 3 Nimmer on Copyright § 2.18[c][1] (1997) ("[B]ooks intended to record the events of a baby's first year, or a record of a European trip, or any one of a number of other subjects, may advance considerable originality in suggestions of specific items of information that are to be recorded, and in the arrangement of such items.") (footnote omitted).

Finally, there is room for doubt about whether the regulatory *per se* version of the blank forms rule still exists. The relevant regulation, 37 C.F.R. § 202.1(c), was promulgated in 1956 and has not been changed since. It was derived from its predecessors,[8] which apparently were based on *Baker. See* 1 Boorstyn on Copyright § 2.14[2] (2d ed. 1998) ("This regulation is based on both *Baker v. Selden* and the basic copyright requirement of original, creative expression.") (footnotes omitted); *Bibbero Systems*, 893 F.2d at 1106. It has been widely interpreted as embodying a *per se* prohibition on the registration of blank forms. *See, e.g.*, 3 Nimmer on Copyright § 2.18[C][1] (1997) ("Copyright Office regulations have similarly denied copyrightability to 'works designed for recording

---

8. 37 C.F.R. § 202.1(c) has at least three predecessors.

In 1899, the Register of Copyrights promulgated guidelines for obtaining copyright registration. Those guidelines stated that blank forms, among other things, were not copyrightable. *See* Directions for Securing Copyrights 16–17 (1899), reproduced in Compilation of Regulations Concerning Copyright 1874–1956 (U.S. Copyright Office).

A couple of years later, a new set of guidelines was promulgated that included some explanation of the reasons for that determination:

"A single sheet, if a literary composition, may be termed a book in applying for copyright registration, but printed productions which are partly unfinished, or with arranged spaces to be filled in, such as blank forms, account books, ledgers, memorandum books, diaries, time and score books, etc., are not productions which can be designated 'books' and registered as such for copyright protection."

Directions for Securing Copyright 24 (1901), reproduced in Compilation of Regulations Concerning Copyright 1874–1956 (U.S. Copyright Office.

Finally, after 1909, when the Copyright Office was granted the authority to issue regulations implementing the Copyright Act, it promulgated one addressing the subject at hand:

"The term 'book' cannot be applied to—blank Books for use in business or carrying out any system of transacting affairs such as record books, account books, memorandum books, diaries or journals, bank deposit and check books; forms of contracts or leases which do not contain original copyrightable matter; coupons; forms for use in commercial, legal, or financial transactions, which are wholly or partly blank and its value lies in their usefulness and not in their merit as literary compositions."

Rules and Regulations for the Registration of Claims to Copyright § 5 (1910).

information which do not in themselves convey information.'"). Some have argued, however, that "[t]he present Copyright Act properly codifies [a] more limited reading of *Baker .v. Selden* by providing that 'in no case does copyright protection ... extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work.'" 1 Nimmer on Copyright § 2.18[D] (1997), quoting 17 U.S.C. § 102(b).

Following enactment of the 1976 Copyright Act, the Copyright Office examined its registration practices with respect to works falling within the scope of 37 C.F.R. § 202.1(c). The examination was terminated in 1980 without amendment to the existing regulation. The Copyright Office explained its decision as follows:

"An item that serves merely as a means for recording information and does not itself convey information or contain original pictorial expression does not constitute copyrightable subject matter. * * * If a work does evidence at least an appreciable amount of ... original creative expression, the Copyright Office will register a claim, regardless of whether or not the work also contains uncopyrightable elements designed for the simple recordation of information. For example, we commonly register contracts, insurance policies, and other textual documents, as well as blank checks with pictorial or artistic authorship and the like, even though such works are designed, in part, to record information. It is the province of the court to adjudicate the extent of protection accord such a registered claim. * * * The Copyright Office ... applies a standard consistent with that applied to all works submitted for registration: does the work contain an appreciable quantum of original, creative expression? If so, the work is treated as a proper subject of copyright, and will be considered for registration. Thus our blank form regulation does not preclude registration of any genre of works *per se;* we examine each form on the basis of whether or not it contains a sufficient amount of original literary or artistic expression to be entitled to copyright protection."

45 Fed.Reg. 63299–63300 (September 24, 1980).

This explanation by the Copyright Office of its practices and interpretation of its own regulations (and indirectly of the underlying statute it is charged with implementing) is entitled to judicial deference, *see, e.g., Satellite Broadcasting & Communications Association of America v. Oman,* 17 F.3d 344, 347–348 (11th Cir.) (noting that Copyright Office's interpretation of statute and regulations is entitled to deference, and acquiescing in Copyright Office's rejection by regulation of the Court's previous interpretation of Copyright Act), *cert. denied,* 513 U.S. 823, 115 S.Ct. 88, 130 L.Ed.2d 40 (1994). For this reason, it is questionable whether 37 C.F.R. § 202.1(c) means what it has widely been interpreted to mean, at least anymore. Some have concluded that it does not. As one commentator has put it: "there is no longer a 'blank form rule' pursuant to which the Copyright Office refuses registration of the material listed in 37 C.F.R. § 202.1(c)." 1 William F. Patry, Copyright Law & Practice 332 (6th ed.1994), citing, *inter alia, Kregos,* 937 F.2d at 709 ("all forms need not be denied protection simply because many of them failed to display sufficient creativity"). Instead, "[c]opyrightability of blank forms, as for all other works, is to be determined solely by reference to the presence or absence of a sufficient amount of *expression." 1 William F. Patry, Copyright Law & Practice* 332 (6th ed.1994).

Placing the policy dispute aside, and dealing with the law as it stands today, four cases guide trial courts within the Ninth Circuit in considering the copyrightability of blank forms. The first is the decision in *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East,* 542 F.2d 1053 (9th Cir.1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977). In that case, the allegedly infringed work was an account book. As the Ninth Circuit explained:

"It contained several pages of instructions. These instructions both precede and follow 31 pages of blank forms—one page for each day of the month. The dealer fills in the day's transactions in the various boxes on the blank forms.

Some of the instructions show the dealer how to fill in the forms. Other instructions show the dealer how to operate his business.

One page of instructions, entitled 'Monthly Sales Summary Evaluation,' begins by advising the dealer to first learn '... how much it costs you to open the door every morning ....' It shows the dealer how to calculate his overhead listing 'wages, rent, supplies, taxes ...' (and ten other items), his other money needs ('loan payment, equipment, note payment, service truck payment ...') and his daily 'break even point.' It advises that: 'Successful dealers shoot for a 25% to 30% gross profit on total retail sales.'

The instructions emphasize the importance of 'balance sales' and estimate how many dollars' worth of motor oil, tires, batteries, accessories, and other items a dealer should try to sell for every one thousand gallons of gasoline. They also set forth optimum profit margins on these items, ranging from 20% to 25% on tires to 100% on lubrication and labor. They conclude with tips on keeping regular records and using incentives to motivate employees: 'Make a game out of seeing how early each day you and your men can sell enough to cover the Daily Operating Expense.'

All of this information is carefully explained in step-by-step procedures under such headings as 'What Successful Dealers Say' and 'Know All Your Expenses.' "

*Williams,* 542 F.2d at 1060. The court of appeals affirmed the district court's determination that the plaintiff's copyrights were valid because the books conveyed information. *Williams,* 542 F.2d at 1061. It held that "the instructions and the blank forms constituted an integrated work entitled to copyright protection." *Williams,* 542 F.2d at 1061.

In deciding *Williams,* the Ninth Circuit failed to cite an earlier decision in which it had reached a similar result. In *Cash Dividend Check Corp. v. Davis,* 247 F.2d 458 (9th Cir.1957), the allegedly infringed work was a "check with other descriptive material." *Davis,* 247 F.2d at 459. As the court explained:

"The 'work' for which appellant's copyright was secured is for use in a method of doing business whereby savings stamps, so-called, supplied by appellant or its licensees are issued by merchants to purchasers of goods who thereafter affix to appellant's works the requisite number of stamps specified on the check.

\* \* \* \* \* \*

The original feature of appellant's plan is that it enables the holders of the stamps to convert them into cash, whereas most stamp plans require that the stamps be redeemed for merchandise. Upon the specified number of stamps being affixed to the check, it can be treated as would an ordinary bank check."

*Davis,* 247 F.2d at 459.

The district court had held that the work, including the check, which was not detached from the rest of the work, was not copyrightable subject matter. The Ninth Circuit reversed. *Davis,* 247 F.2d at 460. The Ninth Circuit explained its decision as follows:

"Accepting without questioning the validity of such regulation [that is, 37 C.F.R. § 202.1(c)], it is apparent that the exclusion of material from copyright protection goes merely to the standard use of the items and not to the exclusion of checks, account books, etc., merely because of what they are. Appellant's writing or work is more than a check. In addition to including the unfilled-out form of a check, the writing conveys to the public information through appellant's authorship relating to its stamp plan. Therefore, the integrated subject of the copyright does not lack the element of originality or authorship requisite for copyrighting."

*Davis,* 247 F.2d at 460. As the court further explained:

"[A]ppellant, it must be understood, does not seek a copyright alone over the check portion of the work or writing, nor does it seek a copyright over its stamp plan. Rather, it seeks a copyright over the writing, with the integrated check, which describes the means by which the stamp-check plan is carried out."

*Davis,* 247 F.2d at 460.

In *Harper House,* the Ninth Circuit again addressed the issue of the copyrightability of

blank forms. *Harper House* concerned the alleged infringement of copyrights in an organizer that was "supposed to aid memory, to help plan, and to help individuals be more creative. The organizers' categories and formats suggest ways in which information should be stored and analyzed." *Harper House*, 889 F.2d at 198. The organizers consisted of "a collection of blank forms for recording calendar information and often-used dates, addresses and telephone numbers. Typically, the blank forms are contained in a loose-leaf binder, with tabs to identify and separate the various sections." *Harper House*, 889 F.2d at 198. The plaintiff obtained a favorable judgment following a jury trial. The court of appeals reversed, holding that the district court's instructions regarding copyrightability were inadequate. It concluded, in relevant part, that the organizers were copyrightable as compilations. *Harper House*, 889 F.2d at 204. The scope of that protection, however, was limited. In the Ninth Circuit's view:

> "any utilitarian, nontextual aspects of the calendar pages, address/telephone pages, other blank forms, ruler, and note paper are not copyrightable. Paper for writing, even ruled paper, is a utilitarian object."

*Harper House*, 889 F.2d at 202. The court further explained that

> "As copyrightable compilations, the organizers' selection, coordination, and arrangement are protectable. The text of the instructions is also protectable. Nevertheless, the blank forms and common property contained within the organizers are excluded from protection."

*Harper House*, 889 F.2d at 205.

The fourth decision is *Bibbero Systems*. In *Bibbero Systems*, the allegedly infringed work consisted of forms known as "superbills" used by doctors to obtain reimbursement from insurance companies.

> "Each superbill contained simple instructions to the patient for filing insurance claims; boxes for patient information; simple clauses assigning insurance benefits to the doctor and authorizing release of patient information; and two lengthy check-

lists for the doctor to indicate the diagnosis and any services performed, as well as the applicable fee. All entries on the checklists are categories specified by the American Medical Association (AMA) or government publications, as are the code numbers accompanying each entry. The superbills differ according to specialty, to reflect the illnesses and treatments most relevant to the individual doctor.

The forms are personalized to include the doctor's name and address, the nature of the doctor's practice, and the hospitals or clinics at which services may be performed. Doctors may use either the checklist provided on the sample form, or may create their own checklists of the most relevant diagnoses, treatments and procedures."

*Bibbero Systems*, 893 F.2d at 1105–1106.[9]

The district court granted summary judgment for defendants on the ground that the superbills were not copyrightable subject matter. *Bibbero Systems, Inc. v. Colwell Systems, Inc.*, 731 F.Supp. 403 (N.D.Cal. 1988). The court of appeals affirmed. *Bibbero Systems*, 893 F.2d at 1108. In doing so, the Ninth Circuit adopted what it characterized as a "bright-line" approach to the blank forms rule. *Bibbero Systems*, 893 F.2d at 1107. As the court explained, the blank forms rule turns on the type of work that a form is, not the amount of original expression that a form contains:

> "The purpose of the Bibbero's superbill is to record information. Until the superbill is filled out, it conveys no information about the patient, the patient's diagnosis, or the patient's treatment. Doctors do not look to Bibbero's superbill in diagnosing or treating patients. The superbill is simply a blank form which gives doctors a convenient method for recording services performed. The fact that there is a great deal of printing on the face of the form—because there are many possible diagnoses

9. Regrettably, the precise scope of the holding in *Bibbero Systems* is uncertain because copies of the forms were not published with the opinion.

and treatments—does not make the form any less blank."

*Bibbero Systems,* 893 F.2d at 1107–1108.

The Ninth Circuit distinguished the *Williams* case on the ground that the super-bills were not text integrated with blank forms which possessed an explanatory force because of the accompanying copyrightable text, but rather contained limited instructions too simple to be copyrightable as text in and of themselves. *Bibbero Systems,* 893 F.2d at 1107–1108. The Ninth Circuit, however, did not distinguish, or even mention, its earlier ruling in *Davis.* The Ninth Circuit also relied heavily on the wording of 37 C.F.R. § 202.1(c), even though it was aware of, but declined to follow, the Copyright Office's 1980 explanation of the manner in which that regulation should be applied. *See Bibbero Systems,* 893 F.2d at 1108 n. 1.

Not surprisingly, the Ninth Circuit's decision in *Bibbero Systems* has been criticized. One authority has described it as "[a] particularly strong—and, to this writer, questionable—application of the blank forms doctrine . . . ." 1 Nimmer on Copyright § 2.18(C)(1) (1997); *see also* 1 Nimmer on Copyright § 2.18(C)(1) (1997) ("It is submitted that this result does not conform to copyright principles protecting original expression."). It also has been criticized or distinguished by other courts of appeal. *See, e.g., Kregos,* 937 F.2d at 709. Since it is controlling authority, however, and since it is more factually similar to this case than is *Williams* or *Davis,* such criticism is essentially beside the point, at least for present purposes.[10]

Proper application of the Ninth Circuit's approach in *Bibbero Systems* to the facts in this case is informed by its discussion of the decision in *Norton Printing Co. v. Augustana Hospital,* 155 U.S.P.Q. 133, 1967 WL 7487 (N.D.Ill.1967). In *Norton,* the court found copyrightable a medical laboratory test form containing a check list of possible laboratory tests. It concluded that "the format and arrangement used, together with the different boxes and terms, can . . . serve to convey information as to the type of tests to be conducted in the information which is deemed important." *Norton,* 155 U.S.P.Q. at 135, 1967 WL 7487.

The Ninth Circuit acknowledged that the forms at issue in *Norton* could not be distinguished from the forms at issue in *Bibbero Systems. Bibbero Systems,* 893 F.2d at 1107. Nevertheless, it concluded that the decision in *Norton* should be "disapproved." *Bibbero Systems,* 893 F.2d at 1107. The court explained its rejection of *Norton* as follows:

> "*Norton*'s holding that a medical laboratory test form 'conveyed information' because it contained some of the possible categories of information but not others, thus indicating which information was important, is potentially limitless. All forms seek only certain information, and, by their selection convey the information sought is important. This cannot be what the Copyright Office intended by the statement 'convey information' in 37 C.F.R. [§ ] 202.1(c)."

*Bibbero Systems,* 893 F.2d at 1107.

■ In the Ninth Circuit, then, the blank forms rule denies copyrightability to forms consisting entirely of spaces for the recording of information, whether labeled or unlabeled, that are not accompanied by text conveying information, such as instructions regarding the use of the forms.

■ How do plaintiff's forms fare under this strict standard? Poorly. Review of plaintiff's forms indicates that they are not copyrightable subject matter. Both the unregistered "MSS Communication Note" form and the registered "Daily Visit Route Sheet" form are plainly uncopyrightable blank forms under almost any principled or dispassionate analysis. The three other forms are more complex, but as to them the conclusion re-

---

10. In fairness, the issue is not an easy one. Courts adopting a more flexible, policy-oriented approach also have failed to articulate a meaningful test for determining when a form is too "blank" to be copyrightable. *See, e.g., Safeguard Business Systems, Inc. v. Reynolds,* 14 U.S.P.Q.2d 1829, 1831 (E.D.Pa.1990) (stating that "whether a form conveys information is a fact-bound determination"), *aff'd,* 919 F.2d 136 (3d Cir.1990). Moreover, the more rich the expressive content of a form consisting of blank spaces intended to be filled in with information, the more the form may begin to resemble an unregistrable "procedure, process, system, [or] method of operation . . . ." 17 U.S.C. § 102.

garding copyrightability is nonetheless the same.

The creators of the forms testified that the forms were not copied from any other source, were unique, and were unlike or even superior to other forms used in the industry. They admitted, however, that some aspects of the forms are mandated by state of federal law. They also conceded that other aspects of the forms were suggested by government regulations or were designed with government regulations in mind. *See generally,* 22 Cal.Code Regs. §§ 74697, 74731, 74733, 74735. In addition, the forms contain a number of fields that are obvious or unavoidable, such as labeled spaces for recording personal data regarding the patient (including the patient's date of birth, marital status, and social security number), the type of medical insurance coverage possessed by the patient, and so on.

The forms do use numerous terms or abbreviations that may be unfamiliar to the lay person. Words or short phrases, of course, are not themselves copyrightable subject matter. *See* 37 C.F.R. § 202.1(a). Moreover, there is evidence that all or nearly all of those terms and abbreviations are widely used in the field, and are well known to all competent practitioners. Indeed, plaintiff's own witnesses conceded that the use of familiar terms and abbreviations was necessary to ensure the utility of the forms. Accordingly, no originality can be found in the selection and use of such abbreviations as "SW" (for social worker), "CG" (for care-giver), "LTC" (for long-term care), "HMC" (for homemaker chore), "PT" (for patient), "POC" (for plan of care), "IHSS" (for in home support services), "SOC" (for start of care), "SSI" (for Supplemental Security Income), "AFDC" (for Aid to Families with Dependent Children), "HMO" (for health maintenance organization), "M–Care" (for Medicare), and the like.

There is nothing about the appearance, structure, or layout of the forms that is artistic, creative, innovative or distinctive. They simply consist of labeled blank spaces in which check marks may be made or information may be recorded.

Finally, the forms contain no text. There are no instructions contained in the forms and the forms are not accompanied by pamphlet explaining how they should be used.

Comparing the forms involved in this case with the forms described in *Bibbero Systems,* however, reveals no tenable distinction between them. Plaintiff's forms are blank forms unaccompanied by sufficient text possessing literary originality to bring them within the "text with forms" exception to the Ninth Circuit's general prohibition against the copyrightability of blank forms. *See Bibbero Systems,* 893 F.2d at 1107; *see also Sheplers Catalog Sales v. Old West Dry Goods,* 830 F.Supp. 566, 569 (D.Kan.1993) (stating that "minimal text on the face of the order form is insufficient to bring it within the 'text with forms' exception to the blank form doctrine."). Indeed, the forms involved in *Bibbero Systems* contained at least some simple instructions. *Bibbero Systems,* 893 F.2d at 1108 & n. 2. Plaintiff's forms have none. Although it is doubtful whether, as a matter of copyright policy, the presence of instructions or other text should be dispositive, *see* Weinreb, 111 Harv. L.Rev. at 1250 ("To prefer the 'bookish' aspects of a work to its functional nature is surely to elevate the incidental over the essential."), that is the distinction that has been made, and like *Bibbero Systems* but unlike *Williams,* there are no instructions accompanying the forms in this case. Plaintiff's forms may be good ones, they may have required thought and work to create, and they may contain some original material or some original organization of unoriginal material, but under the restrictive approach adopted by the Ninth Circuit in *Bibbero Systems,* they are not copyrightable subject matter.[11]

---

**11.** It is important to recognize, however, that contrary to what some have suggested, *see, e.g., Apple Computer, Inc. v. Microsoft Corp.,* 799 F.Supp. 1006, 1021 (N.D.Cal.1992), *aff'd,* 35 F.3d 1435 (9th Cir.1994), *cert. denied,* 513 U.S. 1184, 115 S.Ct. 1176, 130 L.Ed.2d 1129 (1995) ("Blank forms are one example of a feature that is unprotectable because functional."), blank forms are not uncopyrightable simply because they are useful. In *Harper House,* the Ninth Circuit rejected the notion that its previous decision in *Fabrica Inc. v. El Dorado Corp.,* 697 F.2d 890 (9th Cir.1983), changed the blank forms rule. "The 1976 Copyright Act's useful article rule does not affect the copyrightability of an integrated work of text and blank forms, but only that of pictorial, graphic, or sculptural works." *Harper House,* 889 F.2d at 203; *see also Mazer,* 347 U.S. at 218, 74 S.Ct. 460.

Plaintiff's attempt to distinguish *Bibbero Systems* on the ground that in that case all of the fields contained in the forms were prescribed by government regulations or industry standards, while in this case only some were so prescribed, is unavailing. The Ninth Circuit has already rejected the argument that because there is arguably at least some ingenuity involved in the labeling, selection, and arrangement of the blank spaces, forms such as plaintiff's are copyrightable subject matter. This is the import of its critique of the *Norton* decision. *See Bibbero Systems*, 893 F.2d at 1107. The fact that, unlike the situation presented in *Bibbero Systems*, not every field or term used in plaintiff's forms was prescribed by an outside source does not make *Bibbero Systems* inapplicable.

Plaintiff might have attempted to circumvent the lack of narrative textual material by registering the works as compilations and arguing that the selection and arrangement of the items contained in the forms was copyrightable even if the forms themselves, or the items considered in isolation, were not. *See, e.g., Harper House*, 889 F.2d at 205 (holding that daily "organizers" were not copyrightable because they were blank forms, but that their selection, coordination, and arrangement qualified them for protection as a compilation). Here, however, plaintiff did not register the works as compilations, so this avenue of possible protection is foreclosed. Even if plaintiff had done so, however, that strategy might have proved unsuccessful. A "compilation" is a work consisting of a collection of pre-existing material "selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. In *Bibbero Systems*, the forms were registered as a "compilation of terms." Nevertheless, the court concluded that they were not copyrightable. As it explained: "Our holding that the superbill falls within the blank forms doctrine rule precludes it from being copyrightable as a compilation." *Bibbero Systems*, 893 F.2d at 1108 n. 3; *see also Harper House*, 889 F.2d at 205 ("As copyrightable compilations, the organizers' selection, coordination, and arrangement are protectable. The text of the instructions are also protectable. Nevertheless, the blank forms and common property contained within the organizers are excluded from protection."). In Ninth Circuit jurisprudence, then, the uncopyrightability of blank forms apparently trumps their copyrightability as compilations. This confirms that the Ninth Circuit's decision in *Bibbero Systems* turns on the type of work that a blank form is, not the amount of original expression it contains or the copyright rubric under which registration is sought. Therefore, the Ninth Circuit's blank forms rule exemplifies one of the unusual and unfortunate features of contemporary copyright law, especially as it relates to functional works and new technologies, that is, "its reliance, scarcely below the surface, on categories that seem more descriptive than purposive, more referential to what sort of thing something is than to what policy is at stake." *See* Weinreb, 111 Harv. L.Rev. at 1254.

### Attorney's Fees

Defendants have requested an award of attorney's fees as well as their ordinary costs of suit.

Under the Copyright Act, "the court may also award a reasonable attorney's fee to the prevailing party as a part of the costs." 17 U.S.C. § 505. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court resolved a split in the circuits regarding the basis for awarding attorney's fees to the prevailing party in copyright infringement suits. Faced with the choice between the "dual" standard, under which "prevailing plaintiffs are generally awarded attorney's fees as a matter of course, while prevailing defendants must show that the original suit was frivolous or brought in bad faith," on the one hand, and the "even handed" standard, pursuant to which "no distinction is made between prevailing plaintiffs and prevailing defendants," the Supreme Court elected the latter approach. *Fogerty*, 510 U.S. at 521, 114 S.Ct. 1023 (footnotes omitted). The Supreme Court also rejected the argument that "both prevailing plaintiffs and defendants should be awarded attorney's fees as a matter of course, absent exceptional circumstances." *Fogerty*, 510 U.S. at 533–534, 114 S.Ct. 1023. After *Fogerty*, "prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevail-

ing parties only as a matter of the court's discretion." *Fogerty,* 510 U.S. at 534, 114 S.Ct. 1023.

■ In determining whether attorney's fees should be awarded to the prevailing party under the Copyright Act, " '[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.' " *Fogerty,* 510 U.S. at 534, 114 S.Ct. 1023, quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436–437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Relevant "considerations include, but might not be limited to, [1] the degree of success obtained; [2] frivolousness; [3] motivation; [4] objective unreasonableness (both in the factual and legal arguments in the case); and [5] the need in particular circumstances to advance considerations of compensation and deterrence." *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir.1994). In addition, as the Ninth Circuit has explained, " 'exceptional circumstances' are not a prerequisite to an award of attorneys' fees; district courts may freely award fees as long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives." *Historical Research v. Cabral,* 80 F.3d 377, 378 (9th Cir.1996).

■ Considering the circumstances of this case in light of the five factors identified in *Jackson* leads to the conclusion that an award of attorney's fees to the prevailing defendants in this case is not warranted. First, plaintiff did not prevail so the degree of success obtained by plaintiff is poor. Second, plaintiff's claim was not frivolous. The precise scope of the blank forms doctrine is uncertain, and at least some of the forms on which plaintiff sued, may fall somewhere between the work found copyrightable in the *Williams* case and the work found uncopyrightable in the *Bibbero Systems* case. On the other hand, some of the forms on which this suit is based, plainly are blank forms not entitled to protection under the holding of the *Bibbero Systems* case. Third, defen-

dants have not shown that plaintiff had a malicious or otherwise improper motive in bringing suit. Fourth, the arguments made by plaintiff were, for the most part, objectively reasonable in both factual and legal aspects. However, it was not objectively reasonable for plaintiff to argue that forms entitled "Daily Visit Route Sheet" constitute copyrightable subject matter in the Ninth Circuit, despite the Copyright Office's decision to register it. Nor was it objectively reasonable for plaintiff to persist in its claim as to the form entitled "MSS Communication Note," as to which even the Copyright Office acknowledged that registration was inappropriate. Fifth, there is no special reason to deter other plaintiffs or other copyright owners from filing lawsuits such as this one. Properly conceived, the blank forms rule is more of a continuum than a bright-line test, notwithstanding the Ninth Circuit's hopeful dictum to the contrary. *See Bibbero Systems,* 893 F.2d at 1107. It has been widely criticized, and the entire issue of the copyrightability of so-called "blank forms" would benefit from re-examination and refinement. On balance, copyright owners such as plaintiff should be mildly encouraged, rather than discouraged, from requiring courts to wrestle with the issue from time to time.[12] Defendants, however, are entitled to their regular costs of suit. *See* 17 U.S.C. § 505; *see also* Fed.R.Civ.P. 54(d)(1) ("Except when express provisions therefore is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs ....").

## Conclusion

For the foregoing reasons, the allegedly infringed works do not constitute copyrightable subject matter, and, at least insofar as the Copyright Act is concerned, defendants were free to copy them. Accordingly, defendants are entitled to judgment in their favor, and to their costs of suit, but are not entitled to an award of attorney's fees.

**IT IS SO ORDERED.**

---

12. It is noteworthy that the Ninth Circuit affirmed the district court's denial of an award of attorney's fees to the defendant in *Bibbero Systems,* albeit under the pre-*Fogerty* standard and before it adopted its "bright-line" approach to

the copyrightability of blank forms, for similar reasons. *See Bibbero Systems,* 893 F.2d at 1108–1109.

## MEDICAL SOCIAL SERVICE FOLLOW-UP

*AGENCY:*_____

*DX:*_____ *Total Visits to Date:*_____

*Reason for Follow-up visit:* __Resume counseling for coping/adjustment to illness __Assist with additional resources __Ensure implementation of IHSS, MOW, City Ride, Respite care __Ensure adequate LTC __Assist in utilization of support systems __Counsel for cooperation/compliance with POC __APS referral __Other_____

*Persons present during visit:* __Patient __Spouse __Daughter __Son __CG/HMC __Other_____

*Changes since last visit, Explain:* _____

*OBSERVATIONS:* Pt is: __Alert __Oriented x _____ __Disoriented __Forgetful __Confused

Appearance: _____

*PROBLEMS ADDRESSED:* _____
_____
_____
_____

*INTERVENTIONS:* _____
_____
_____
_____
_____
_____

*ADDITIONAL RESOURCES PROVIDED:* _____
_____
_____

*OUTCOME:*_____
_____
_____

*PLAN:* _____
_____

*Follow Up Needed:* ___Yes- Specify: __Home Visit __Telephone Call ___No ___Case Closed-Date:_____

*Pt/family informed of D/C:* __Yes __No

*Signature & Title:*_____ *Date:*_____

*Co-signature & Title:*_____ *Date:*_____

*Pt Name:*_____ *MR#:*_____ *SOC Date:*_____

EXHIBIT 1

# DAILY VISIT ROUTE SHEET

Home Health Agency Name: _____

Worker Name (print): *ADVANZ—* _____     Title: _____     Date: _____

| Patient Name | Patient Signature | MR# | Time In | Time Out | Total Visit Time | Visit Code |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

VISIT CODE:
E-EVALUATION
F-FOLLOW-UP
D-DISCHARGE

Worker Signature/Title: _____
I certify that the above information is true & correct.

White-Agency          Yellow-Advanz

EXHIBIT 2

# MEDICAL SOCIAL SERVICE EVALUATION

**AGENCY:**_____

**DX:**_____

**Reasons For Referral:** __Assess home situation __Coping w/ illness __Family dynamics __Non-compliance
__Future planning/LTC __Brief counseling __APS referral __Placement assistance
__Community resources __IHSS/Prvt. HMC __Transportation __MOW
__Financial assistance __M-Care eligibility __M-Cal eligibility __Other_____

**Tx Codes:** __E1-Social/Emotional Factors __E2-Counseling __E3-Financial __E4-Community Resources __E5-Other _____

**Persons present at interview:** __Patient __Spouse __Daughter __Son __CG/HMC __Other_____

**Identifying Data:** Age____ DOB_____ Marital status_____ SS#____-___-_____ Language _____
**Home Environment:** __House __Apt. __BCF __Safe __Clean __Unsafe __Dirty __Cluttered __Stairs __Odorous __Appropriate __Not-appropriate

**Living Arrangement:** __Alone __With_____ **Medical Transportation:** __Available by_____ __Not available
**Support System:** __Spouse __Children __Relatives __Friends __Adequate __Limited __Poor __None __Comments_____
**Physical Functioning:** __Ambulatory __Amb. w/ assistance __Amb. w/ assistive device __W/C bound __Bed bound
**ADL Management:** __Self care __Care w/assistance __Total care **Physical Appearance:** __Groomed/Clean __Disheveled/unkept
**Financial Status:** __SSP-$_____ __SSI-$_____ __SSD-$_____ __Prvt. pension-$_____ __AFDC-$_____ __Savings Has IHSS-- yes___ no___
**Medical Insurance:** __M-Care __M-Cal __Private __HMO __M-Care eligible __M-Cal eligible __No insurance Eligible for IHSS-- yes___ no___
**Caregiver Status:** __Available __Not available __IHSS __Private/Fam. CG name/relationship_____ Phone: (___)_____
**The care Pt receives at home is:** __Adequate __Limited __Inadequate **Pt/CG Compliance with POC:** __Compliant __Non-Compliant
**Mental Status:** __Alert __Oriented to: __Person __Place __Time __Disoriented __Confused __Forgetful __Unable to determine-reason_____
**Emotional Status:** __Depressed __Helpless/hopeless __Withdrawn __Emotionally labile __Tearful __Anxious __Angry __Frustrated __Stressed __Distressed
__Fearful __Poor body image __Denial __Resistant __Stable __Unable to determine-reason_____
**Adjustment to Illness:** __Not coping __Fairly coping __Coping **Comments:** _____
**Identified Problems:** __1-Pt lacks adequate assistance for ADLs to maintain POC: __Personal Care __Domestic Assistance __Meal Preparation __Med. Compliance
__2-Pt/CG lack knowledge of community resources: __IHSS __MOW __Transportation __MSSP __SS programs __Support Systems __Respite
__3-Pt's emotional status is affecting/interfering with his/her POC/recovery; Pt is: _____

**Additional Problems:**_____

**Interventions:** __1-SW counseled Pt/CG on: __Options for Mngt. of ADL's __Importance of adequate care/support to maintain POC __Med. Compliance
__2-Pt/CG educated on: __IHSS __MOW __Transportation __MSSP __SS Programs __Private HMC/CG __Support Systems __Respite
__3-SW provided: __Brief Supportive/Emotional Counseling __Cognitive/Behavioral Counseling __Reality/Orientation Counseling
__Relaxation Counseling __Empowerment __Instructed Alternative Coping Skills __Counseled on Adjustment to illness/physical losses

**Additional Interventions:**_____

**Referrals & Contacts made (Include names & phone#s):** _____

**Outcome:** _____

**Overall Goal(s):** __1-Pt. to remain home safely w/ adequate care & learn about: __Options for Mngt. of ADL's __Importance of maintaining POC __Med. Compliance
__2-Pt/CG to learn & obtain: __IHSS __MOW __Prvt. Transportation __MSSP __SS Programs __Prvt. HMC/CG __Support Systems __Respite
__3-Pt to: __Express feelings/thoughts/losses __Learn alternative coping skills for better mngt. of Dx & POC __Reach emotional stability/balance

**Additional Goals:**_____

**Plan:** _____

**Follow Up Needed:** __Yes- Specify: __Home Visit __Telephone Call __No __Case Closed - Date:_____
**Frequency:** __1m1 __1m2 __2 m1 **Pt/CG informed of Plan:** __Yes __No

**Signature & Title:**_____ **Date:**_____

**Co-signature & Title:**_____ **Date:**_____

**Pt Name:**_____ **MR#**._____ **SOC Date:**_____

EXHIBIT 3

## MEDICAL SOCIAL SERVICE DISCHARGE SUMMARY

*AGENCY:*_____

*DX:*_____

*MSS Evaluation Date:*_____   *MSS Discharge Date:*_____

*Physician:*_____

*Reasons For Referral:* __Assess home situation   __Coping w/ illness   __Family dynamics   __Non-compliance
__Future planning/LTC   __Brief counseling   __APS referral   __Placement assistance
__Community resources   __IHSS/Prvt. HMC   __Transportation   __MOW
__Financial assistance   __M-Care eligibility   __M-Cal eligibility   __Other_____

*Reasons For Discharge:* __No further care needed   __Moved out of area   __Admitted to Hospital-Date_____
__Pt/fam refused service   __Lack of progress   __Admitted to SNF-Date _____
__Transferred to another HHA   __Physician request   __Patient Expired-Date _____
__Other _____

*Patient's condition on admission:*_____
_____
_____
_____

*Patient's condition on discharge:*_____
_____
_____
_____

*Visits requested:* _____   *Visits made:* _____

*Frequency on Evaluation:* __1m1 __1m2 __2m1 __2m2

*Frequency met:* __Yes __No-reason _____

*Goals:* __Met __Part met-reason_____   __Not met reason_____

*Community referrals made:* __IHSS __MOW __Transportation __SNF __BCF __MSSP __APS __Support Grps.
__Mental Health __SS Offices __Other _____

*At discharge, Pt's support system is:* __Adequate __Inadequate

*At discharge, Pt's adjustment to illness is:* __Adequate __Inadequate

*Notification of Discharge:* __Patient-Date:_____   __Family/CG-Date:_____

*Signature & Title:*_____   Date: _____

*Co-signature & Title:*_____   Date: _____

*Pt Name:*_____   *MR#:*_____   *SOC Date:*_____

EXHIBIT 4

**MSS COMMUNICATION NOTE**

*AGENCY:* _____

Patient Name: _____ _____  MR #: _____
　　　　　　　　　 Last　　　　　 First

*Telephone Call To:* ____Arrange Eval. Visit ____Arrange FU Visit ____Check Status ____Nursing ____PT/Fam ____Other

*Name & Phone # of Person(s) contacted:* _____

_____

_____

_____

_____

_____

*Signature & Title:* _____  *Date:* _____

EXHIBIT 5