**ROSS, BROVINS & OEHMKE, P.C., Plaintiff,**

v.

**LEXIS/NEXIS, Defendant.**

**No. 03–74474.**

United States District Court, E.D. Michigan, Southern Division.

Dec. 9, 2004.

Allen M. Krass, John G. Posa, Gifford, Krass, Birmingham, MI, for Plaintiff.

James E. Stewart, Butzel Long, Ann Arbor, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [# 7]

EDMUNDS, District Judge.

This matter came before the Court on Defendant's motion to dismiss or for summary judgment and Plaintiff's motion for partial summary judgment. This is a copyright case involving automated legal forms. Plaintiff, Ross, Brovins & Oehmke, P.C., conducting business as LawMode ("LawMode"), for several years developed automated legal forms for Defendant, Lexis/Nexis, owner of Matthew Bender & Co., and acquirer of Capsoft Development Corp. (collectively, "LexisNexis"). LexisNexis ended its contractual relationship with LawMode, and then published anoth-er library of automated legal forms. Law-Mode filed suit, alleging that LexisNexis's forms infringed its copyright and violated the Lanham Act, and asserted several state law causes of action. This matter is now before the Court on LexisNexis's motion to dismiss the entire Complaint, or in the alternative for summary judgment. LawMode filed a cross-motion for partial summary judgment on the copyright claim. For the reasons stated below, the Court (1) GRANTS LexisNexis summary judgment on the copyright claim; (2) DENIES LawMode's motion for partial summary judgment; (3) GRANTS LawMode leave to withdraw its Lanham Act, unjust enrichment and unfair competition claims without paying LexisNexis's costs; (4) DISMISSES part of LawMode's breach of contract claim; (5) GRANTS LawMode leave to amend its fraud and misrepresentation claim; (6) DISMISSES part of the breach of duty of good faith and fair dealing claim; and (7) DENIES LexisNexis's request for attorneys' fees and costs.

## I. Facts

### A. The LawMode Work

In 1996, with an oral understanding that culminated in a contract the next year, LawMode began creating automated legal forms using the LexisNexis proprietary software HotDocs Pro. (Oehmke Aff. ¶ 5, Pl.App. at 73.) Under the Content Development Agreement (the "Agreement"), LawMode promised to create, modify, and supplement on a periodic basis a software product which Capsoft (and then its successors, Matthew Bender & Co., and LexisNexis) was to market and sell. (Compl.Ex. A.) CapSoft paid LawMode a 30% royalty on gross sales. (Oehmke Aff. ¶ 7, App. at 74.) During the five year contract, LawMode automated hundreds of legal forms published by the Michigan

State Court Administrative Office (SCAO), updated and revised these forms semiannually, and created new forms where SCAO had not published an official form. *Id.* LawMode's automated SCAO forms, as well as the other legal forms, were marketed by LexisNexis. These forms and templates allowed users to keyboard client and case specific data in a series of original on-screen menus ("dialog boxes"), and the keyboarded data was automatically saved in a data file and inserted by HotDocs into legal forms as a case progressed. *Id.* Case-specific data was entered only once so there was no retyping. *Id.* The templates generated legal forms that were signature-ready when printed. *Id.* ¶ 9. The final resulting product was entitled *Lexis-Nexis Automated Michigan Forms* (2543 Release August 2001 ISBN 82054–32–84) (the "LawMode Work") (Compl.¶¶ 5, 6.)

Under the Agreement, Capsoft was to "own all Products created under this Agreement," and LawMode was to own all content, with "content" defined as "Hot-Docs templates created by Developer." (Agreement Amendment, Compl. Ex. A, § § 2.c, 1.b.) By 2002, LawMode's Work included more than 500 automated legal forms. (Compl.¶ 10.) LawMode registered a copyright as of June 17, 2003 in the "component files (ending in .cmp) which automated all [State of Michigan] forms (except real estate and IRS Forms) in this work created additional forms represented by computer files ... created library of forms with descriptions ..." (Compl.Ex. C.) Many were automated versions of forms available from the state, while dozens were LawMode-created forms for use under the Federal Rules of Civil Procedure and the Michigan Court Rules. (Compl.¶ 10.) The LawMode-created forms are not at issue because LawMode does not allege that LexisNexis infringed any of them.

Between 1997–2002, gross sales were approximately $258,304, and LexisNexis paid LawMode $77,273 in royalties. *Id.* ¶ 11.

The Agreement was for a term of three years, with automatic renewal for one-year terms "unless written notice of termination is given by either party at least 90 days prior to the end of a term." *Id.* § 7(a). LexisNexis terminated the Agreement by notice dated November 2, 2001, effective February 26, 2002. (Compl.Ex. B.) Lexis-Nexis terminated the contract for three reasons. First, LexisNexis was trying to achieve consistency in its various form products, and LawMode did not follow LexisNexis's automation and style standards. (Barclay Decl. ¶ 4.) Second, Law-Mode's automation skills were ·not high enough. *Id.* Third, LexisNexis believed that customers wanted the official forms, and not the forms created by LawMode. *Id.* LexisNexis claims it knows how to automate the public domain forms, so LawMode was not adding any value. *Id.*

**B. The LexisNexis Works**

In July 2002, LexisNexis published *LexisNexis Automated Michigan SCAO Forms* (2584 Release ISBN 82055–44–48) (the "2002 LexisNexis ·Work"), and then released an updated version in April 2003, *LexisNexis Automated Forms* (2584 Release ISBN 82055–44–48) (the "2003 Lexis-Nexis Work"). During the development of the 2002 LexisNexis Work, LexisNexis issued a confidential memo directing its staff to "ignore any and all markup and/or automation from [LawMode's] former Michigan projects unless you are really confused about how to automate something. Then, proceed with caution and check with Linda [Barclay] to make sure it's correct." (Pl. Appx. at 36.) LawMode claims that the LexisNexis Works infringe its copyright in the compilation of the forms and the automation of the forms.

## C. Comparison

LexisNexis's analysis reveals that (a) the LawMode Work contains 545 forms, (b) the 2002 LexisNexis Work contains 402 forms, (c) 324 forms are common to the two products (and all of the common forms are SCAO forms), (d) 221 forms (about 40% of the LawMode Work) are unique to the LawMode product, and (e) 78 forms (almost 20% of the LexisNexis Work) are unique to the 2002 LexisNexis Work. (Barclay Decl. ¶ 10.) 80% of the LexisNexis Work, then, are forms also contained in the LawMode Work. *Id.* The 2003 LexisNexis Work contains 632 forms. *Id.* 353 of those forms also appear in the LawMode Work. *Id.* Thus 44% of the forms selected by LexisNexis for the 2003 LexisNexis Work are not included in the LawMode Work. *Id.*

LawMode presents a different percentage of forms common to the LawMode Work and the 2002 LexisNexis Work. It claims that 92% of forms in LawMode's Work appear in the 2002 LexisNexis Work. LawMode arrived at the 92% figure by starting with 406 forms in the 2002 LexisNexis Work, then subtracting 25 forms that were unavailable when LawMode published its Work. (Def.Ex. 14, App.4.) Of the remaining 381 forms, 31 forms appeared in the 2002 LexisNexis Work but not in the LawMode Work. *Id.* Therefore, 350, or 92%, of the forms in the LawMode Work are also in the 2002 LexisNexis Work. *Id.* The parties do not significantly disagree about the number of forms in the works or which forms are common to the works.

As to the organization of the forms into certain categories, the LawMode Work organizes forms into 23 categories, while the 2002 LexisNexis Work organizes its forms into 16 categories. (Def. Ex. 14, at App. 2.) LawMode's arrangement includes the placement of certain topics into subfolders and sub-subfolders. For example, the "Civil Litigation" folder includes the subfolders "Alternative Dispute Resolution" and "General," and the sub-subfolder "Case Evaluation." (Barclay Decl. ¶ 12.) LexisNexis did not use subfolders or sub-subfolders with the 2002 product. *Id.* Three categories are identical: LexisOne Forms, Claim and Delivery, and Domestic Relations. Five other LexisNexis categories are worded differently but contain the same subject matter as the LawMode categories. For example, LawMode has categories for EPIC Decedent's Estate, Civil Litigation, Landlord–Tenant Eviction, Personal Protection Order, and EPIC Guardianship. LexisNexis has categories names Estates–Trusts, Civil–General, Landlord–Tenant & Land Contract, Personal Protection, and Guardian–Conservator. (Def.Ex. 14, Appx.2–3.)

The parties attached several examples of the forms and dialog boxes. A typical comparison of dialog boxes in the LawMode Work and the 2002 LexisNexis Work is the dialog box titled "Plaintiff Information" by both works. (Pl. Appx. at 20.) The LawMode version asks for "Name," and then directly below the word "Name" leaves a blank box for the user to type the name. Directly below the blank box appears the word "Address" and then another blank box, then "City ST ZIP" and another blank box, then "Telephone" and another box contained these punctuations: "( )-". Along the bottom of the dialog box, there are three buttons for "Clear," "Edit," and "Save." Down the right side of the box appear three buttons names "Next," "Cancel," and "Help". The LexisNexis dialog box is the same except that instead of "Address," LexisNexis's box asks for "Street Address," LexisNexis separated out City, State, and Zip Code into separate boxes, and there is no "Help" button in LexisNexis's dialog box.

Another example of a dialog box appears in the SCAO Form MC 39, Judgment, Claim and Delivery. (Pl. Appx. at 32.) The LawMode Box is titled "Property." The dialog box first asks "Shall the property be .delivered?" The user can "click" the computer mouse button on "Yes" or "No." If the user clicks "No," the next two prompts are greyed out, i.e. the user cannot enter information in the boxes following the prompts. The next two prompts are "The specified property shall be delivered immediately to:" and "Describe Property." Then the question: "Are there any other orders?" and again the user can click on "Yes" or "No." Finally, there is a prompt for "Further Orders."

The LexisNexis box is titled "Order of Judgment (continued)." The first prompt is "Is it ordered that the following described property shall be delivered immediately to the specified party?" Like the LawMode box, the next two prompts are greyed out if the user clicks "No" to the first question. The next prompts are: "Party" and "Property Description." The remainder of the box is identical to the LawMode box.

LawMode's "deposit material," the material submitted to the United States Copyright Office with LawMode's copyright application, includes several examples of its automated forms. (Deposit Materials, filed as an exhibit to the supplemental brief.) For each, LawMode provided "marked up" form, which is the SCAO form with LawMode provided answers in each open space provided. The answers are names of variables such as "Plaintiff Info CO" or "Defendant Name" which correspond to names of dialog boxes. (Deposit Materials Ex. 3.) Thus, when a user enters information into the "Plaintiff Information" dialog box, the computer is instructed to enter the information in the place on the form where the variable

"Plaintiff Information" appears. *Id.* Following the marked-up forms are screen shots of the dialog boxes used for each form. *Id.* Next are pages of instructions to . the computer which create the automated forms ("automation program"). For example, one part of the automation program for the Civil Answer form reads as follows:

**Answers to Complaints**

**Type:** Dialog

**Variables**

Complaint is answered by

**Additional Text:**

Answers

**True/False grouping:** no grouping.

**Dialog style:** Regular.

**Prompt alignment:** Above field. Left edges are aligned.

**Help text:**

(Deposit Material Ex. 3.)

A comprehensive side-by-side comparison of LawMode's and LexisNexis's versions of the civil judgment form can be found in LexisNexis's brief at 23–25.

On November 5, 2003, LawMode filed a seven-count complaint against LexisNexis alleging the following causes of action:

(1) Copyright Infringement;

(2) Violations of the Lanham Act;

(3) Breach of Contract;

(4) Unjust Enrichment;

(5) Common Law Unfair Competition;

(6) Fraud and Misrepresentation; and

(7) Breach of Duty of Good Faith and Fair Dealing.

On April 27, 2004, the parties stipulated to a "Summary Judgment Scheduling Order," in which LexisNexis agreed to provide LawMode with its global standards or style book or manual used to prepare automated Michigan forms, and LawMode agreed to provide between five and nine

examples of forms from the LawMode Work which exemplify the alleged copyright infringement. The parties further agreed that on or before June 21, 2004, "Defendant will file its answer or, in lieu of an answer, a summary judgment motion based on at least one of the examples of Defendant's alleged infringement that Plaintiff provided pursuant to paragraph 2 above." The parties also agreed that "[t]here will be no further discovery by the parties until after the Court rules upon this summary judgment motion, unless the parties otherwise agree."

On July 8, 2004, LexisNexis filed its motion to dismiss or for summary judgment, LawMode responded and also moved for summary judgment on the copyright claim, and this Court heard arguments on September 29, 2004. At the hearing, the Court ordered additional briefing. The Court has considered the original briefs, the additional briefs, and the parties' oral arguments.

## II. Standards for Motions to Dismiss and Summary Judgment

Defendant brings this motion as one to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir.1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review " 'requires more than the bare assertion of legal conclusions.' " *In re Sofamor Danek Group,*

*Inc.*, 123 F.3d 394, 400 (6th Cir.1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving

party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir.2002).

In this case, Defendant is testing more than the sufficiency of the copyright claim as pled in the Complaint by directing the Court to evidence outside the Complaint. Therefore, the Court will treat the motion to dispose of the copyright claim as one for summary judgment. As to the state law claims, neither party addresses what standard the Court should apply. Because it appears that the parties have not conducted discovery on those claims yet, and because from the stipulated order it appears that the parties intended to move for summary judgment only on the copyright claim, a 12(b)(6) analysis is appropriate.

## III. Analysis

The crux of this case is LawMode's copyright claim, and so the Court addresses that claim first. The Court then analyzes each other claim individually.

### A. Copyright Claim

#### 1. Framework for Analyzing a Copyright Claim

■ To establish copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inv. v. Rural Tel. Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

■ The first element requires courts to consider the "copyrightability" of the work. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 538–39 (6th Cir.2004). This step requires courts to separate idea from expression. *Id.* Courts initially filter elements through two fundamental concepts underlying copyright law: copyright only protects originality, and copyright only protects expressions of ideas rather than the ideas themselves. As for originality, "[t]he *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to its author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (internal citations omitted).

■ Second, only the expression of ideas, not the ideas themselves, are protectable. *Id.* To distinguish the two, the Sixth Circuit often uses Judge Hand's "abstractions test", which he developed in a decision about rights to a play:

> Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more that the most general statement of what the play is about, and at times might consisted only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "Ideas," to which, apart from

their expression, his property is never extended.

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930). *See Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 319 (6th Cir.2004); *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir.2003). This is not a bright line test between idea and expression. Rather, it helps put a creative work on a spectrum between idea and expression that can assist a court to distinguish the two. *Murray Hill*, 361 F.3d at 319.

■ Building on these axiomatic principals, courts have developed several mechanisms to filter out protected material from unprotected material. For example, the "merger doctrine" recognizes that copyright protects expression, not ideas, but "[i]n some circumstances, however, there is a 'merger' of idea and expression, such that a given idea is inseparably tied to a particular expression." Nimmer § 1301[B][3]. *See also Kohus*, 328 F.3d at 856 ("the merger doctrine establishes that '[w]hen there is essentially only one way to express an idea, the idea and its expression are inseparable [i.e., they merge,] and copyright is no bar to copying that expression.' ").[1] Put another way, the merger doctrine "holds that when the expression of an idea is inseparable from the idea itself, the expression and idea merge. 'When the 'idea' and its · 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law.' " *Kern River Gas Transmission Co. v.*

*Coastal Corp.*, 899 F.2d 1458, 1463 (5th Cir.1990).

In *Kern River*, the plaintiff produced maps showing the location of its proposed new natural gas pipe line. *Id.* at 1460. The plaintiff's maps consisted of public topographical maps with the plaintiff's original drawing of a gas line on them. *Id.* at 1460. The court applied the merger doctrine, and held that because the map was the only way to express the idea of the location of the pipeline, the idea and expression merged and the maps were not subject to protection. *Id.* at 164–65.

The First Circuit has held that the merger doctrine prevented sweepstakes contest instructions from deserving copyright protection because they were so straightforward and simple. *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 678–79 (1st Cir.1967). "When the uncopyrightable subject matter is very narrow, so that 'the topic necessarily requires', if not only one form of expression, at best only a limited number, to permit copyrighting would mean that a party or parties, by copyrighting a mere handful of forums, could exhaust all possibilities of future use of the substance." *Id.* at 678 (internal citations omitted). The court concluded that the contest rules were so simple and straightforward that they could only be expressed in one way or a limited number of ways and were not protected by copyright. *Id.* at 679.

■ Similarly, none of the elements dictated by necessity or function are protected by copyright. *See Kohus*, 328 F.3d at 856; *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 704 (2nd Cir.1992). In the seminal case *Baker v. Selden*, 101 U.S.

---

1. "It is not always clear whether the merger doctrine is deemed a bar to copyright protection itself, rather than simply a defense to the charge of infringement via substantial similarity." Nimmer § 13.03[B][3]. Although not answering this precise question directly, the Sixth Circuit has analyzed merger via the substantial similarity defense. *See Kohus*, 328 F.3d at 856.

99, 25 L.Ed. 841 (1879), the Supreme Court explained that elements which are required by an idea are not protected by copyright. There, Selden copyrighted a book which explained a unique bookkeeping system. *Id.* at 100, 101 U.S. 99. The book included blank ledger sheets, or forms, "illustrating the system and showing how it is to be used and carried out in practice." *Id.* The defendant used Selden's idea of bookkeeping to create a similar ledger, but one that used different headings and arrangement of the columns. *Id.* Selden's estate sued Baker for copyright infringement of the ledgers. The Court explained the familiar principle of copyright law that an idea is not protected by copyright but the expression of the idea is. *Id.* at 102–103, 101 U.S. 99. Selden's bookkeeping system was the idea, and he had no exclusive right to the system. *Id.* at 104, 101 U.S. 99. The ledgers were necessary to use the bookkeeping system, and therefore were not protected by copyright. *Id.*

■ Relatedly, the "scénes á faire" doctrine precludes copyright protection for "scenes" "that must be done." *Lexmark,* at 534. "In the computer-software context, the doctrine means that the elements of a program dictated by practical realities—e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices—may not obtain protection." *Id.*

■ The second step of a copyright infringement claim is establishing copying. In the absence of direct evidence of copying, copying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that sufficiently probative similarities exist as to protectable material in the two works. *Murray Hill,* 361 F.3d at 316.

■ Not all copying is copyright infringement. To determine infringement, the Court must decide if the works are substantially similar.[2]

> Two separate components actually underlie proof of copying ... First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration. If the answer is "yes," then one can conclude that, as a factual proposition, that copying may have occurred. But the question still remains whether such copying is actionable. In other words, that first answer does not vouchsafe resolution of the legal question whether such copying as took place gives rise to liability for infringement.

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B] (2004) ("Nimmer"). Nimmer goes on to conclude, "hence, substantial similarity remains an indispensable element of plaintiff's proof, even in cases (such as *Feist*) in which defendant does not contest factual copying." *Id.*

### 2. Application of the Law

LawMode claims LexisNexis infringed its copyright by copying its compilation of forms and its automation of the forms. LexisNexis's motion is explicitly based only on the substantial similarity of pro-

**2.** Using the term "substantial similarity" in two distinct portions of copyright analysis can be confusing, and so one authority on copyright suggests using the term "probative similarity" when looking for copying, and "substantial similarity" when determining actionable copying. Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1301[B] (2004).

tectable expression[3], not on independent creation. For the purposes of this motion, it does not contest LawMode's ownership of the copyright, its access to the copyrighted materials, or actual copying.

### a. Compilation of the Forms

1976 Copyright Act provides for copyrights in "compilations," defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. *See also Feist*, 499 U.S. at 358, 111 S.Ct. 1282 (holding that copyright protects "the selection, coordination, and arrangement of facts."). The LawMode Work is undeniably a compilation.

■ *Feist* is the leading authority on compilation copyright. In *Feist*, a telephone company sued a publishing company for copying portions of a telephone directory. *Id.* at 342–43, 111 S.Ct. 1282. The Court reiterated the well-established law that facts are not copyrightable because they lack originality. *Id.* at 345–46, 111 S.Ct. 1282. As to factual compilations, "[t]he compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through copyright laws." *Feist*, 499 U.S. at 348, 111 S.Ct. 1282. The Court recognized that the resulting copyright is thin, and that a subsequent compiler can use the same facts so

long as the subsequent compilation is not of the same selection and arrangement. *Id.* at 349, 111 S.Ct. 1282. An author must satisfy three requirements to copyright a compilation: "(1) collection and assembly of pre-existing material, facts, or data; (2) the selection coordination or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination or arrangement, of an 'original' work of authorship." *Id.* at 357, 111 S.Ct. 1282. The Court went on to find that the telephone company directory did not qualify as a compilation because it utterly lacked any creativity. *Id.* at 361–64, 111 S.Ct. 1282.

In *J. Thomas Distrib., Inc. v. Greenline Distrib., Inc.*, 100 F.3d 956, 1996 WL 636138, *1 (6th Cir.1996), the plaintiff registered a mail-order catalog of replacement parts for landscaping power equipment as a compilation. The plaintiff organized its catalog in two original ways: it added an additional subheadings, and rearranged the sequence of the information. *Id.* The court held that while original, the format lacked the requisite creativity:

> The additional subheadings provided by the plaintiff are similar to the business headings one would find in the yellow pages. Such an arrangement is typical, if not inevitable. It does not qualify for copyright protection ... The information provided can only be presented in a limited number of ways. Plaintiff's arrangement constitutes a mechanical, routine, and garden variety compilation. Such a compilation fails as a matter of law to meet the minimal level of creativity required for copyright protection.

*Id.* at *2, 100 F.3d 956.

Two compilation copyright cases from other circuits are also instructive. In

---

**3.** LexisNexis relied on cases published before *Lexmark* that suggest the substantial similarity analysis is the appropriate place to determine the copyrightability of a work. Therefore, although LexisNexis maintains that it is only contesting substantial similarity, it is really also contesting the first step of copyright infringement analysis.

*Matthew Bender & Co., Inc. v. West Publishing Co.*, 158 F.3d 693 (2nd Cir.1998), the plaintiffs were two publishers of judicial decisions in electronic format. They filed a declaratory judgment action against the defendant, a publisher of judicial opinions organized in printed volumes, or "reporters." The plaintiffs sought to include citations to the defendant's reporters by inserting the initial page numbers and successive page numbers at the point in the opinions where page breaks occur in the reporters. *Id.* at 697. The defendant claimed a copyright protected interest in its compilation of cases. *Id.* 695. The Second Circuit reviewed *Feist*, and then concluded that because the page numbers were assigned by an automatic computer program, "the internal pagination of West's case reporters does not entail even a modicum of creativity, [so] the volume and page numbers are not original components of West's compilation copyright." *Id.* at 699.

In *BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g*, 999 F.2d 1436 (11th Cir.1993), the Eleventh Circuit rejected a competing business phone directory publisher's claim that the arrangement and headings possessed the requisite creativity to earn copyright protection. The plaintiff's business directory, a "yellow pages" advertising directory, was organized by business category alphabetically. *Id.* at 1438. The court held that even if the defendant copied the heading structure from the plaintiff's directory, the heading structure was not an original expression deserving copyright protection:

> Initially, many of the selected headings, for example "Attorneys" or "Banks," represent such an obvious label for the entities appearing under these headings

as to lack the requisite originality for copyright protection. [Plaintiff] can claim no copyright in the idea of dividing churches by denomination or attorneys by area of specialty. Further, any expressive act in including a category such as "Banks" or in dividing "Attorneys" into categories such as "Bankruptcy" or "Criminal Law" would lose copyright protection because it would merge with the idea of listing such entities as a class of businesses in a business directory. The evidence submitted by [the defendant] also establishes that many of [the plaintiff]'s headings result from certain standard industry practices, such as the recommendations of the National Yellow Pages Sales Association, with regard to the selection and phrasing of headings in business directories.

*Id.* at 1444.[4]

 LexisNexis does not argue that LawMode's selection of Michigan legal forms fails to satisfy this requirement of originality. Because the copyright extends only to the creativity in selection and arrangement, however, if another compilation varies the selection or arrangement, it is not substantially similar to the original. *See Kregos v. Associated Press*, 3 F.3d 656, 663 (2nd Cir.1993). In *Kregos*, an author of pitching forms, which are compilations of statistics about baseball pitchers used to predict pitchers' future performances, had created a compilation protected by copyright. The court limited the copyright protection of his forms, however: "if someone else displays the requisite creativity by making a selection that differs in more than a trivial degree, [the plaintiff] cannot complain." *Id.* The defendant's forms differed from the plaintiff's in four out of ten categories of statistics, and the court con-

---

4. The court also reasoned that the business subscriber selects the heading under which its listing will appear, and so the plaintiff could not claim that its own creativity was responsible for the selection of businesses for certain headings. *Id.*

cluded that the forms were not substantially similar. *Id.* at 664. The court also noted the similarities were largely necessitated by the limited number of relevant statistics available regarding pitchers. *Id.*

In considering LexisNexis's motion against LawMode, the Court views the evidence, including the statistics about overlapping material, in LawMode's favor. For instance, LawMode claims the LexisNexis 2002 work contains 406 forms, while LexisNexis claims it contains 402 forms. This Court assumes the work contains 406 forms. Also according to LawMode, 56 of the forms were unique to the LexisNexis product, while 350 of the LexisNexis forms also appeared in the LawMode work.[5] Thus, 86% of the forms in the 2002 LexisNexis Work are the same as the forms in the LawMode work.[6] 54% of the 2003 LexisNexis Work is the same as the LawMode Work. In both cases, the LexisNexis Works differ in their selection of forms from the LawMode work in more than a "trivial degree." *Kregos*, 3 F.3d at 663. LexisNexis deserves summary judgment on this aspect of the copyright claim.

Another potentially protected aspect of LawMode's compilation is the organization of forms into groups, and the names assigned to the groups. Even though LawMode stresses the similarities and LexisNexis stresses the differences (and the fact that its categories are named for the SCAO categories in every instance), the Court first turns to what aspects of LawMode's categorization is copyrightable before deciding the degree of similarity. *BellSouth*, 999 F.2d at 1445. The question

for the Court is whether LawMode's organization of forms into the specifically named categories contains the modicum of creativity required for copyright protection.

In addition to the categories named in the Fact section of this Opinion, some of LawMode's other categories are Name Change, Estate Planning, Domestic Relations, Criminal Law, and Debt Collection. Placing legal forms into these categories and the category names themselves do not exhibit any creativity, but rather are obvious and functional like the headings in the yellow pages. Many of the headings appear on the SCAO directory of forms, while the others are standard ways in the legal field to label certain legal actions or areas of practice. "A subsequent collector is not required to arrange its compilation in a fashion not usable by those for whom it is intended." *BellSouth*, 999 F.2d at 1442, quoting *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator*, 777 F.2d 485, 491 (9th Cir.1985) (holding that two automobile replacement part catalogs were not substantially similar where the arrangement was one of the only useful ways to arrange the catalogs). Alternatively, the level of creativity so thin that infringement requires almost identical expression, and LexisNexis's works differ in more than a trivial degree. Accordingly, the Court GRANTS LexisNexis summary judgment on LawMode's copyright claim based on the compilation of the forms.

### b. Automation of the Forms

■■■ According to LawMode's copyright registration, it claims a copyrightable

---

**5.** LawMode does not count 25 forms unique to the LexisNexis product because they were unavailable when LawMode published its work. This subtraction is inappropriate. The critical inquiry is how similar the products are, not why dissimilarities exist. To subtract unique LexisNexis forms from the analysis skews the percentage inappropriately.

**6.** LexisNexis claims that 324 forms are common to the two products, 221 forms are unique to the LawMode product, and 78 forms are unique to the LexisNexis product. Thus, LexisNexis concludes that only 80% of its product overlaps LawMode's.

expression in the automation of Michigan forms as follows: "Using HotDocs computer software, created component files (ending in .cmp) which automated all forms (except real Estate IRS forms) in this work." Plaintiff does not claim a copyright in the forms themselves.

The parties focus their arguments on the level of similarity between the automated forms, which are broken down into dialog boxes, in their respective Works. LexisNexis claims any similarities in the automated forms are dictated by the Michigan forms themselves and by the parameters of HotDocs. LexisNexis also argues that in light of these considerable restraints on creativity, its forms differ in numerous ways from LawMode's. Linda Barclay, a Legal Assistant and Template Editor at LexisNexis, describes the constraints on the automation process this way:

> In automating the forms, the automator's discretion is tightly constrained by the forms themselves and the nature of the software. The form dictates that certain information has to go in certain places (logic-flow). The software dictates the most efficient way for the user to get the information into those places. The so-called "look and feel" of the software that end-users will perceive, including the colors, fonts and type size used in the dialog boxes (which call for entry of data by the user), are also determined by the HotDocs program; the automator has no control over these elements.

> The content of the dialog boxes and the particular wording used in the dialogs and variable prompts allows for some discretion in the automation process. There may be more than one way to label a particular prompt for data to be entered by a user into a field. One programmer might use the prompt "Pe-titioner Spouse Name," while another might use the prompt "Name of Petitioner's Spouse," for the same field ... There may also be more than one way in which to order the appearance of the dialogs. But, again, the logic of the form usually dictates the flow of the information requests. There could also be some discretion as to where a dialog box ends and where another one begins. But again, a particular dialog box is, in most cases, limited to the data on a particular issue called for on a particular form.

(Barclay Decl. ¶¶ 14, 15.)

LawMode, on the other hand, provides examples of "alternate expressions," which are examples of alternative ways some of the dialog boxes could have been written so that they would not infringe on Law-Mode's copyright. For example, Law-Mode shows an alternate expression to the dialog box for Judgment, Claim and Delivery, described in the fact section above. (Pl. Appx. at 34.) In the alternate expression, the same fields are grayed, but some of the prompts appear next to each other horizontally instead of above or below each other vertically. LawMode also stresses that the questions (in any of the dialog boxes) could have been split up into more than one box or two or more boxes could have been combined.

LawMode also stresses that there are up to sixteen "form fill options" yet LexisNexis chose the same "default" option as Law-Mode. LexisNexis could have chosen not to use dialog boxes, making HotDocs operate like a typewriter, so the that form is visible on the screen and the user advances to the next variable with the tab key. LexisNexis replies that the default settings are selected as the defaults because they work best, and LexisNexis should not be required to sell a product that is difficult for the end user to use.

As this Court suggested at oral argument, the approach of comparing the similarities of the dialog boxes and forms is incorrect. Blank forms are not copyrightable, and the dialog boxes are themselves small blank forms. Federal regulations state that among the works not subject to copyright are "blank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information." 37 C.F.R. § 202.1(c). *See also M.M. Bus. Forms Corp. v. Uarco, Inc.*, 472 F.2d 1137 (6th Cir.1973) (holding that forms for electrical appliance service dealers to use were not copyrightable as "blank forms"); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir.1989) (holding that blank address and calendar pages are not copyrightable); *Advanz Behavioral Mgmt. Res., Inc. v. Miraflor*, 21 F.Supp.2d 1179 (C.D.Cal.1998) (holding that medical social service home health care forms were not copyrightable).

Since blank forms are not copyrightable, and the dialog boxes are blank forms, it is of no use comparing the similarity of the dialog boxes.[7] After examining the copyright registration and the accompanying deposit materials, the Court concludes that it is the automation program that may incur a copyrightable interest. Despite LexisNexis' unsupported argument to the contrary, LawMode may copyright its automation program even though it used HotDocs to write it. See United States Copyright Office, Circular 61: Copyright Registration for Computer Programs (June 2002) (instructing applicants for computer program copyrights to complete "space 6" "if the work was developed using an underlying computer program or authoring tool"). LawMode did complete Space 6 on its registration application, and identified HotDocs as the underlying program or authoring tool.

A computer program is defined as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." *Id.* The automation program fits this definition. Accordingly, the automation program is at issue here.

In a recent decision, the Sixth Circuit considered a district court's grant of a preliminary junction based on a copyright infringement claim, and held that a simple computer program, the "Toner Loading Program" (used for replacing printer ink cartridges), may not have sufficient originality to be copyrightable. *Lexmark*, slip. op. at 11. The court reached this conclusion for several reasons. First, the programming language used only eight simple commands. *Id.* at 539. Second, the program was only 55 bytes. *Id.* Third, "efficiency considerations" and "the physical realities" of the toner cartridge and printer constrained the programmer's choices. *Id.* The defendant's expert witness concluded that external factors dictate the look and feel of the program, and that the programmer did not have many choices. *Id.* at 539–40. He also noted that the alternative forms of the program that the plaintiff suggested contained either trivial differences, or ones that impeded the efficiency and function of the program. *Id.* at 540. The court stopped one step short of declaring the program uncopyrightable,

---

7. LawMode relies on *Lotus Dev. Corp. v. Borland Int'l Inc.*, 799 F.Supp. 203 (D.Mass. 1992) for the proposition that the dialog boxes are protected, but that case was overruled by *Lotus Dev. Corp. v. Borland Int'l Inc.*, 49 F.3d 807 (1st Cir.1995), *aff'd* 516 U.S. 1167, 116 S.Ct. 1062, 134 L.Ed.2d 206 (1996). The appellate decision persuades this Court to reach the opposite conclusion, that is the dialog boxes are not protected.

and instead left it to the district court to determine the copyrightable interest using the correct analysis. *Id.*

In this case, the automation program exhibits too little originality to create a copyrightable interest. The public forms require certain information. The fact that LawMode's automators created dialog boxes requesting the end user to enter that same information does not show any creativity. Moreover, the fact that LawMode chose HotDoc's "default" setting is simply the result of HotDoc's preselecting the most convenient and efficient choices for the automator. LawMode's choosing to use HotDoc's default settings, as opposed to selecting other less efficient options for automating the forms, also does not exhibit the amount of creativity necessary to support a copyright. Likewise, the program itself is too simple and functional to support a copyright. The automator chose the variables, such as "court telephone" and "type of judgment", but those are dictated by the information the form requires. The automator also chose the "prompt alignment," i.e. above field, left edges aligned, but any creativity involved is too trivial.

In sum, the evidence demonstrates that there is no question that the program that automates the legal forms are not copyrightable. Therefore, LexisNexis deserves summary judgment.

**B. Lanham Act, Unjust Enrichment, and Unfair Competition Claims (Counts II, IV, and V)**

LexisNexis moved to dismiss Law-Mode's Lanham Act, unjust enrichment, and unfair competition claims. LawMode stipulated to withdraw all three claims with prejudice, provided each party bears their own attorney fees and costs. Law-Mode stresses that LexisNexis did not seek its concurrence on this motion to dismiss or for summary judgment on these claims. LexisNexis argues that fees and costs in bringing this motion should be shifted to LawMode because they waited to admit the claims were meritless until LexisNexis had to expend legal fees to respond to them. The Court GRANTS LawMode leave to withdraw these claims and DENIES LexisNexis's request for costs since LexisNexis did not seek concurrence.

**C. Breach of Contract Claim (Count III)**

LexisNexis seeks to dismiss LawMode's breach of contract claim for several reasons: (1) the claim does not meet the $75,000 amount in controversy requirement; (2) the claim is preempted by copyright law; and (3) after comparing the complaint with the Agreement, it fails to state that LexisNexis breached the Agreement. LawMode only responded to the jurisdiction issue. The Agreement contains a limitation of liability clause that states:

THE LIABILITY OF EITHER PARTY FOR ANY DAMAGES UNDER THIS AGREEMENT SHALL IN NO EVENT EXCEED THE AMOUNT OF PAYMENTS RECEIVED BY IT UNDER THIS AGREEMENT. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR INDIRECT, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OR LOST PROFITS SUFFERED AS A RESULT OF OR IN ANY WAY CONNECTED TO THE LICENSE GRANTED IN THIS AGREEMENT, WHETHER UNDER THEORY OF CONTRACT, [OR OTHERWISE].

LexisNexis claims it earned a total of $41,527.58 in revenue from the LawMode Work and paid LawMode $12,458.27 in royalties, leaving it a net total of $29,069.31. (Stein Decl. ¶ 6.) LawMode,

however, submitted evidence that Lexis-Nexis grossed $258,304, of which it paid $77,273 to LawMode. Therefore, the claim exceeds the jurisdictional minimum. In any event, the Court has supplemental jurisdiction.

LexisNexis argues (and LawMode does not rebut) that some of the breach of contract claims are really copyright claims, and as such are preempted. *See Am. Movie Classics v. Turner Entm't Co.*, 922 F.Supp. 926, 931–32 (S.D.N.Y.1996). The allegation that LexisNexis accuses of being essentially a copyright claim accuses LexisNexis of "[a]ttempting to convert to its own use LawMode's forms without paying licensing fees" and by "[m]isappropriating LawMode's content by converting some or all of it to Defendant's own use." (Compl. ¶ ¶ 30(a), 48(b).)

 A state law claim is preempted by 301 of the Copyright act where the work is within the scope of the "subject matter of the copyright" and the rights granted under state law are equivalent to any of the exclusive rights within the scope of federal copyright protection. *Stromback v. New Line Cinema*, 384 F.3d 283, 301, 2004 WL 2032112, *12 (6th Cir.2004). Here, Law-Mode's allegations regarding the forms are within the subject matter of the copyright. As to the second element,

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir.2001). For example, in *Stromback*, the Sixth Circuit held that a commercial misappropriation claim was preempted where the claim was that the plaintiff expended his time, effort, and money to write a screenplay and that the defendant misappropriated the screenplay and will reap the rewards the plaintiff expected. *Stromback*, at 384 F.3d 301, 2004 WL 203112, at *13. On the other hand, the plaintiff's misappropriation of trade secrets claim was not preempted because it required the additional element of confidentiality, which a copyright claim does not. *Id.* at 303, 2004 WL 2032112, *14.

 In this case, while the substance of the breach of contract claim is very similar to the elements of a copyright claim, Plaintiff's claim requires the existence of a valid contract, which a copyright claim does not. *See Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1318 (11th Cir.2001). Therefore, it is not preempted.

 As to LexisNexis's arguments that LawMode's other breach of contract allegations are baseless, LawMode has failed to respond. The other allegations are:

- LexisNexis failed to timely and correctly publish revised or updated versions of LawMode's Work and failed to meet promised production deadline, which hurt the image of LawMode's Work in the eyes of its purchasers;
- LexisNexis continued to sell LawMode's Work during 2002 without updates until LexisNexis's own work was published;
- LexisNexis marketed its own work to the purchasers of LawMode's Work, exploiting the product loyalty and initial purchases earned by LawMode; and
- LexisNexis failed to publish certain libraries of forms.

A review of the Agreement and Amendment to the Agreement reveals that even if these allegations are true, none constitute

a breach of the Agreement. The Agreement does not provide any time period for Capsoft to publish updates or revisions, there is no provision prohibiting Capsoft from selling LawMode's Work without updates or revisions, and there is no noncompete clause preventing LexisNexis from selling its own product to prior customers of LawMode's Work after the Agreement terminated. Furthermore, the Agreement provides that Capsoft did not add new libraries of forms to LawMode's Work unless and until Capsoft accepted the new content by listing it in the Content Notice Chart. LawMode does not allege that Capsoft accepted the new libraries, and therefore Capsoft had no contractual obligation to add the libraries to Law-Mode's Work.

Without the benefit of LawMode's response, it certainly seems that LawMode has failed to state a claim as to these other allegations. Therefore, the Court DENIES the motion to dismiss the allegation based on converting LawMode's Work to its own use without paying licensing fees, and GRANTS the motion to dismiss on the other allegations.

### D. Fraud and Misrepresentation Claim (Count VI)

Fed.R.Civ.P. 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Sixth Circuit has instructed that plaintiffs must at a minimum "allege the time, place and contents of the misrepresentation(s) upon which he relied." *Am. Town. Ctr. v. Hall '83 Assocs.,* 912 F.2d 104, 109 (6th Cir. 1990).

LawMode alleges three instances of fraud. First, LawMode alleges that Lexis-Nexis made "some representation(s) about past or existing material facts to Law-Mode" and that those representations were known by LexisNexis to be false and were relied upon by LawMode to its detriment. (Compl.¶ 58.) Second, LawMode alleges that Defendant induced LawMode to invest substantial time in developing and revising templates; in editing and contributing to sales, marketing and telemarketing plans; in attending seminars, lectures and other meetings to promote the product; and in continuing to operate under the Agreement, all with knowledge that LexisNexis was going to terminate the Agreement. (Compl.¶¶ 60–64.) Third, LawMode's most substantively pled fraud allegation is that in 2000, "Lexis/Nexis mailed invitations to 8,000 attorneys to meet LawMode's author/attorneys Brovins/Oehmke and view a demonstration of LawMode's Copyrighted Work at the State Bar of Michigan annual Convention ... Lexis/Nexis fraudulently induced Law-Mode's attorneys Brovins/Oehmke to prepare for, travel to, and work this Convention to promote LawMode's Copyrighted Work," and that a LexisNexis sales manager "refused to allow Brovins/Oehmke to return to the booth, stating that the interest in LawMode's forms was distracting Conventioneers from purchasing another LexisNexis product." (Compl.¶ 59.)

LawMode's first two allegations do not meet Rule 9(b)'s minimum requirement, and LawMode does not seriously contend that they do. The third is adequate even though LexisNexis argues that it does not include the content of the misrepresentation (but it does—the representation was that Brovins and Oehmke would be allowed to promote the LawMode Work), nor how LawMode was harmed (but by implication, their harm could have been loss of royalties from the additional promotion opportunity).

LawMode requests 21 days to amend its Complaint, and claims it is entitled to amend as a matter of right. Fed.R.Civ.P. 15(a) provides that "[a] party may amend

the party's pleading once as a matter of course at any time before a responsive pleading is served ... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Law-Mode and LexisNexis stipulated to a scheduling order that provided LexisNexis would file its answer or, in lieu of an answer, this summary judgment motion. The responsive pleading, the answer, has not been served yet but the parties agreed that this motion for summary judgment would be "in lieu" of the answer, so whether LawMode can amend as of right is murky. In any event, even if LawMode is not permitted to amend as of right, the Court GRANTS LawMode leave to amend its Complaint to include more particular allegations of fraud.

### E. Breach of Duty of Good Faith and Fair Dealing Claim (Count VII)

LawMode claims that LexisNexis breached its inherent duties of good faith and fair dealing by:

- failing to market LawMode's construction lien templates (Compl.¶ 67a);
- failing to provide LawMode with a complimentary copy of the most current versions of HotDocs Professional Edition, *Id.* ¶ 67e;
- licensing the Michigan Institute of Continuing Legal Education ("ICLE") as a HotDocs reseller (after previously licensing LawMode as a HotDocs reseller), resulting in ICLE products that were confusingly similar to LawMode's Work and diverted licensing fees which could have been earned by LawMode, *Id.* ¶ 68a;
- failing to renew or even negotiate the Agreement, *Id.* ¶ 68b;
- failing to respond to LawMode's request for a list of subscribers so that LawMode could market its Work to those subscribers, *Id.* ¶ 68c;
- failing to register LawMode's Work with the U.S. Copyright Office, *Id.* ¶ 68d;
- wrongfully converting LawMode's trade secrets, trade dress, methods and processes incorporated into LawMode's Work and revealed by LawMode to LexisNexis during their commercial relationship, *Id.* ¶ 69f; and
- paying its Michigan sales staff substantially less in commissions on the Law-Mode Work than the staff would have earned if it sold other LexisNexis products, *Id.* ¶ 70.

The Agreement provides that Utah law governs disputes regarding the Agreement. (Compl. Ex. A § 12(g).) Utah law provides that "[u]nder the implied covenant of good faith ... the parties to a contract are deemed to intend that the terms of a contract should be construed in a manner which assumes the parties intended that the duties and rights created by the contract should be performed and exercised in good faith. Such a covenant cannot be construed, however, to establish new, independent rights or duties not agreed upon the parties." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). As to all of the allegations other than the trade secrets allegation, a review of the Agreement confirms it can not be reasonably construed to require any of the acts listed in the allegations. The Court GRANTS LexisNexis summary judgment on those allegations.

As for the trade secrets allegation, the Michigan Uniform Trade Secrets Act ("MUTSA") displaces the common law misappropriation of trade secrets cause of action. Mich. Comp. Laws § 445.1910. MUTSA defines "Misappropriation" as

(i) Acquisition of a trade secret of another by a person who knows or has

reason to know that the trade secret was acquired by improper means.

(ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

(A) Used improper means to acquire knowledge of the trade secret.

(B) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws § 445.1902(b).

Trade secret is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws § 445.1902(d).

■■■ LawMode claims that it "disclosed in confidence" the following information to LexisNexis during the course of their work under the Agreement: LawMode's sources of research, application of SCAO and other government forms, data from Michigan practice categories with a market for automated forms, sources of legal forms and their revisions, identification of Michigan markets and submarkets, intelligence about competitors and their products, legal expertise as to the coding of SCAO and other forms, "and more." LawMode's allegations are sufficient to withstand Rule 12(b)(6) scrutiny. LexisNexis argues that LawMode has not alleged that it disclosed any of the information while taking measures to maintain the secrecy of the information, but LawMode did allege that the information was "disclosed in confidence." Viewed in a light most favorable to Law-Mode, that allegation is sufficient to survive a motion to dismiss. Therefore, the Court GRANTS LexisNexis's motion to dismiss the first group of allegations but DENIES the motion to dismiss the allegations of unfair trade practices.

### F. Fees and Costs

Section 505 of the Copyright Act provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

■■■ The Court may award attorney's fees if Plaintiff's claim is frivolous and objectively unreasonable. *Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 356–57 (6th Cir.2004). The Court should consider the following non-exclusive factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The only

factor applicable to this case is objective unreasonableness, and LawMode's claim is not objectively unreasonable, even though ultimately unsuccessful. The Court DENIES LexisNexis's motion for attorney's fees.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

(1) LexisNexis's motion for summary judgment on the copyright claim is GRANTED and LawMode's motion for partial summary judgment is DENIED; (2) LawMode is GRANTED LEAVE to withdraw its Lanham Act, unjust enrichment and unfair competition claims without paying LexisNexis's costs; (3) LexisNexis's motion to dismiss LawMode's breach of contract claim is GRANTED IN PART; (4) LexisNexis's motion to dismiss the fraud and misrepresentation claims is DENIED and LawMode is GRANTED LEAVE to amend its fraud and misrepresentation claim; (5) LexisNexis's motion to dismiss the breach of duty of good faith and fair dealing claim is GRANTED IN PART; and (6) LexisNexis's request for attorneys' fees and costs is DENIED.